IN THE MATTER OF: ALLEGHANY COUNTY DEPARTMENT OF SOCIAL SERVICES v. TAMI W. REBER AND CRAWFORD D. REBER

No. 8423DC1170

(Filed 2 July 1985)

**Parent and Child § 1.6— termination of parental rights—abuse of child—insufficient evidence**

In a proceeding to terminate respondent mother's parental rights following an adjudication that respondent had abused the child in that she created or allowed to be created a substantial risk of physical injury to the child by leaving the child with its father, who caused an injury to the child, findings concerning abuse, the probability of its repetition, and the child's best interests were not based on clear, cogent and convincing evidence and were insufficient to support termination of respondent's parental rights on the ground of abuse. G.S. 7A-289.30(e).

Judge WEBB dissenting.

APPEAL by respondent Tami W. Reber from *Osborne, Judge.* Judgment entered 3 May 1984 in District Court, ALLEGHANY County. Heard in the Court of Appeals 15 May 1985.

*Attorney General Thornburg, by Assistant Attorney General Jane Rankin Thompson, for petitioner appellee.*

*Legal Services of the Blue Ridge, by Andrea B. Young and Bruce Kaplan, for respondent appellant.*

WHICHARD, Judge.

Respondent Tami W. Reber (respondent) appeals the termination of her parental rights to her daughter Tiffany Reber (Tiffany). Tiffany was twenty-six months old at the time of the hearing, is severely microcephalic and is developmentally slow. Crawford D. Reber (Reber), whose parental rights also were terminated, does not appeal.[1] Based upon our application of *In re Ballard*, 311 N.C. 708, 319 S.E. 2d 227 (1984), to termination proceedings on the grounds of abuse, we have determined that certain findings of fact concerning Tiffany's best interests, respondent's fitness to care for her, and the probability of the repetition of abuse were not based upon "clear, cogent, and convincing evidence" as required by G.S. 7A-289.30(e). We therefore reverse.

I.

The background of the case is as follows:

On 14 June 1982 respondent lost custody of Tiffany due to the following incident: On 30 May 1982 respondent left the child, age three months, alone with Reber for approximately ten minutes while she went next door to make a phone call. When she returned Reber told her Tiffany had been vomiting and choking. Respondent found Tiffany barely breathing and rushed her to the hospital. Tiffany was diagnosed as suffering from a brain hemorrhage due to trauma. Due to lack of history of trauma, the ex-

---

1. Reber was convicted of felonious child abuse for the conduct, described herein, which gave rise to this termination proceeding. That conviction subsequently has been reversed by this Court in *State v. Reber*, 71 N.C. App. 256, 321 S.E. 2d 484 (1984), for lack of sufficient evidence that Reber caused the injury the child sustained or that he caused it intentionally. Petitioner initiated this proceeding when Reber was in prison.

amining physician believed the injury was due to child abuse such as violent shaking. She referred the case to petitioner.

For purposes of removing custody from respondent Tiffany was adjudicated an abused child within the meaning of G.S. 7A-517: a juvenile whose parent "[c]reates or allows to be created a substantial risk of physical injury to the juvenile by other than accidental means which would be likely to cause death, disfigurement, impairment of physical health, or loss or impairment of the function of any bodily organ." G.S. 7A-517(1)(b).

That adjudication appears to be based upon the following evidence, reintroduced at the termination proceeding: Reber had handled Tiffany roughly in respondent's presence, tossing her two inches or so above his hands and failing to support her head. Respondent, as well as other family members, had reprimanded him for this. Reber had a violent temper and had "popped" respondent on several occasions prior to the birth of Tiffany. As a result of Reber's abuse, respondent at one time spent three months at a battered women's shelter, where she gave birth to a previous baby. That child died at age two and one-half months after unexplained vomiting and choking. Respondent was originally reluctant to leave Tiffany alone with Reber.

II.

Pursuant to *Ballard*, 311 N.C. at 715, 319 S.E. 2d at 232, we assume *arguendo* that the 14 June 1982 adjudication of abuse was binding upon the court in the termination proceeding. *See also In re Wilkerson*, 57 N.C. App. 63, 69-70, 291 S.E. 2d 182, 186 (1982). The *Ballard* court found that a binding prior adjudication of neglect does not prejudice the parents in a termination proceeding because the court there must determine "the then existing best interests of the child and fitness of the parent(s) to care for it in light of all evidence of neglect and the probability of a repetition of neglect." *Ballard*, 311 N.C. at 715, 319 S.E. 2d at 232. Thus, in a proceeding to terminate parental rights on grounds of neglect, *Ballard* requires clear, cogent, and convincing evidence that neglect authorizing termination under G.S. 7A-289.32(2) exists at that time. *Id.* at 716, 319 S.E. 2d at 232. To that end the court must "consider all evidence of relevant circumstances or events which existed or occurred *either before or after* the prior adjudication of neglect." *Id.* at 716, 319 S.E. 2d at 232-33.

We believe the law and reasoning of *Ballard* apply equally when parental rights are terminated pursuant to a finding of abuse. Thus, while we may not reexamine whether respondent created or allowed to be created a substantial risk of physical injury to Tiffany by leaving her with Reber on 30 May 1982, we are bound to review the findings relating to conduct both before and after that date. Petitioner must show by clear, cogent, and convincing evidence, G.S. 7A-289.30(e), that grounds for termination—here abuse or the probability of its repetition—exist at the time of the termination proceeding. Once grounds for termination are found the court must determine whether termination is in the child's best interest. G.S. 7A-289.31.

## III.

Here the evidence shows that prior to the ten minute interval when respondent left Tiffany with Reber she had not abused or neglected the child. The child was fed regularly and had no bruises or other outward signs of mistreatment. As soon as respondent noticed that the child was ill she rushed her to the hospital and stayed with her in the hospital room for two weeks. Respondent and Reber are the parents of a daughter five years older than Tiffany who is a normal, active child. Not until Tiffany's injury was there any suggestion that Reber may have contributed to the unexplained death of their previous child. In fact, the attending pediatrician specifically informed respondent and Reber that "[t]he baby's loss [was] not due to anything that [they] did or did not do."

Respondent earned her GED (General Education Diploma) two years prior to the time of the hearing and has completed two quarters of college. Her employment history has been erratic and she and Reber have repeatedly separated and reconciled. At the hearing she testified that she was babysitting for a ten-month old niece, but had been offered a good job, and intended to go to school.

Respondent stated that she loves Tiffany, misses her, and wants her home. She has repeatedly told petitioner she would do what was necessary to get Tiffany back. Respondent has visited Tiffany at her foster home although she has had some difficulty completing arranged visitations due to lack of transportation and money. A social worker for petitioner testified that he had visited

respondent in her home and had not found it to be unsatisfactory, unclean, or dangerous. He observed that the older child received adequate parenting.

Respondent has been counseled concerning her parenting skills. At the time of the hearing she had moved to Dare County and bought a trailer. She contacted the local Developmental Evaluation Center and arranged for home visits to teach her how to deal with a handicapped child. She investigated a day care center that cares for the handicapped. She became a member of the North Carolina Handicapped Children's program and wrote to their headquarters for information about organizations that could help her. She asked Dare County social services to make home visits to evaluate the improvements she had made on the trailer in preparation for regaining custody of Tiffany. A social worker made several unannounced visits and testified that except for the bathtub which was disconnected there was no reason the trailer could not support a family.

At the time of the hearing Reber was living in the trailer with respondent and their older child. He stated that this was temporary and she stated that they had no intent to reconcile.

IV.

We do not find from the above clear, cogent, and convincing evidence that respondent is unfit to care for Tiffany, that there is a probability of repetition of abuse, or that terminating respondent's parental rights is at this time in Tiffany's best interests. *See Ballard*, 311 N.C. at 715, 319 S.E. 2d at 232. We believe even pre-*Ballard* case law requires stronger evidence to terminate parental rights. In *In re Adcock*, 69 N.C. App. 222, 227, 316 S.E. 2d 347, 350 (1984), the Court found that the "totality of the evidence . . . was plenary, clear, cogent, and convincing . . . ." In *In re Moore*, 306 N.C. 394, 405, 293 S.E. 2d 127, 133 (1982), three grounds for termination were supported by clear, cogent, and convincing evidence, and as to one of these grounds "there was no evidence to the contrary." In *In re Biggers*, 50 N.C. App. 332, 343, 274 S.E. 2d 236, 243 (1981), the Court found "overwhelming and uncontradicted evidence" to support the trial court's findings.

Here the evidence is neither plenary, nor overwhelming, nor uncontradicted. While we would not hesitate to uphold the "harsh

judicial remedy," *Adcock*, 69 N.C. App. at 227, 316 S.E. 2d at 350, of terminating parental rights in the best interest of the child if the basis for termination were supported by clear, cogent, and convincing evidence, as the statute requires, we conclude that this evidence does not provide such support.

The order terminating respondent's parental rights to Tiffany Reber is therefore

Reversed.

Chief Judge HEDRICK concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent. The parental rights of Tami W. Reber were terminated on the ground that her child was abused. This is one of the grounds for termination under G.S. 7A-289.32(2). G.S. 7A-517 (1) defines an abused child as follows:

(1) Abused Juveniles — Any juvenile less than 18 years of age whose parent or other person responsible for his care:

a. Inflicts or allows to be inflicted upon the juvenile a physical injury by other than accidental means which causes or creates a substantial risk of death, disfigurement, impairment of physical health, or loss or impairment of function of any bodily organ. . . .

I believe the evidence is such that the court may find, as it did, by clear, cogent and convincing evidence that Tami W. Reber has "created, or allowed to be created, a substantial risk of physical injury to Tiffany Reber." This finding that Tami W. Reber has abused Tiffany Reber supports the conclusion to terminate the parental rights.

I do not believe *In re Ballard*, 311 N.C. 708, 319 S.E. 2d 227 (1984), controls this case. That case was based on neglect as a ground for termination. Neglect can be corrected. A change in circumstance can occur and at the time of the hearing there may be no neglect. Once a child has been abused, as was Tiffany Reber, it cannot be corrected. This is a ground for termination under the

statute and I believe it was proved in this case. I believe also that the evidence was such that the court did not abuse its discretion by terminating the parental rights of Tami W. Reber.

I vote to affirm.