IN THE MATTER OF: RYAN MILLS; ASHLEY MILLS; SAMANTHA GRIGG,
MINOR CHILDREN

No. COA01-767

(Filed 6 August 2002)

**1. Termination of Parental Rights— neglect—clear, cogent, and convincing evidence**

Although the trial court erred by finding and concluding in a termination of parental rights case that respondent putative father neglected the three pertinent children based on the fact that he never appeared in court in the underlying juvenile file concerning his children, the trial court did not err by concluding that clear, cogent, and convincing evidence existed to show that respondent father neglected the three children after respondent learned of their existence, because: (1) respondent displayed minimal interest in the children's welfare, and respondent indicated that he would relinquish his rights to the children if the tests showed that one of the children was not his daughter; (2) respondent never requested visitation rights with the children, nor has respondent ever filed a motion seeking visitation rights with the children despite being represented by counsel; and (3) respondent has never paid any child support for any of the children, and he did not send the children any gifts or other type of acknowledgment on their birthdays.

1

IN RE MILLS

[152 N.C. App. 1 (2002)]

### 2. Termination of Parental Rights— stable home environment—best interests of child

The trial court did not err by concluding in a termination of parental rights case that it was in the children's best interests that respondent putative father's parental rights be terminated, because: (1) all three children are thriving in stable foster care where their particular medical and behavioral conditions are being properly addressed; (2) respondent has no biological connection to any of the children, and suffers from a significant medical condition; and (3) it was within the trial court's discretion to determine that the children's interests would be better served by remaining in a familiar and stable home environment rather than moving to an alien state to live with strangers only distantly related to them.

Judge Tyson concurring in part and dissenting in part.

Appeal by respondent from judgments entered 2 May 2001 by Judge Gary S. Cash in Buncombe County District Court. Heard in the Court of Appeals 13 February 2002.

*J. Elizabeth Spradlin for respondent appellant.*

*Buncombe County Department of Social Services, by John C. Adams, for petitioner appellee.*

TIMMONS-GOODSON, Judge.

Richard N. Mills ("respondent") appeals from judgments terminating his parental rights to minor children Ashley Nicole Mills ("Ashley"), Samantha McNeill Grigg ("Samantha"), and Ryan Alexander Mills ("Ryan") (collectively, "the minor children"). For the reasons stated herein, we affirm in part and reverse in part the judgments of the trial court.

The facts pertinent to the instant appeal are as follows: Respondent and Charlene Diane Mills King ("Charlene") married in 1986 and resided in North Carolina. One son, Casey Mills ("Casey"), was born of the marriage on 27 May 1987. Respondent and Charlene separated in 1988, and respondent moved from North Carolina to Seattle, Washington, with Casey and remained in contact with Charlene for approximately six months. Respondent thereafter had no further contact with Charlene. Respondent moved to Spokane, Washington, and then to Lynchburg, Ohio, where he currently resides

**IN RE MILLS**

[152 N.C. App. 1 (2002)]

with his son, Casey, his fiancée, Micaela Montgomery, and her three children. Charlene divorced respondent in 1996.

While respondent and Charlene remained married but separated, Ashley was born 8 August 1989, Samantha was born 27 July 1992, and Ryan was born 16 March 1995. Respondent was unaware, however, of the children's existence. On 20 October 1998, the Buncombe County Department of Social Services ("DSS") filed juvenile summons and petitions, alleging that the minor children were neglected children. On 1 February 1999, the court adjudicated all three children to be neglected children on the grounds that their mother had abandoned them, failed to provide appropriate care and supervision, and deprived Ashley of necessary medical care, such that the children lived in an environment injurious to their welfare.

Respondent had no knowledge of the minor children or the adjudication until he was sued and served for Ashley's child support on 26 October 1999. When respondent contacted DSS about Ashley, he learned of the existence of the other minor children, all of whom were in the custody of DSS. At that time, respondent believed that Ashley might be his child, but a paternity test statistically excluded respondent as the biological father of Ashley on 14 April 2000. The child support action was properly dismissed against respondent.

On 10 April 2000, DSS filed a petition to terminate the parental rights of the mother, Charlene, respondent, and the known and unknown biological fathers. The matter came before the trial court on 4 September and 3 October 2000. Respondent appeared and was represented by counsel at the termination hearing. Based on the evidence presented at the hearing, the trial court made the following pertinent findings of fact concerning respondent's rights as to Ashley:

14. That Todd Hayes [social worker for the Buncombe County Department of Social Services] also testified as to the allegations of the petition pertaining to the Respondent Legal Father; that said Respondent has no relationship to the minor child and has admitted that he is not the biological father of said child; that Hayes first talked with said Respondent at some time in October of 1999; that paternity testing of said Respondent occurred in January or February of the year 2000 and of the minor child in March of said year; that said Respondent told Hayes that when they first talked that he wanted to wait to visit with the minor child until it was determined whether or not he was her biologi-

**IN RE MILLS**

[152 N.C. App. 1 (2002)]

cal father; that said Respondent last spoke with Hayes at some time in March of 2000 and continued to state that until paternity testing was completed he did not want to commit to any relationship regarding the minor child; that a home study has never been completed on the home of said Respondent; that on or about May 4, 2000, Hayes learned that said Respondent was excluded as the biological father of the minor child, Ashley, when he spoke with the guardian ad litem of said child; that said Respondent did not request visitation with said child prior to the filing of this petition.

15. That the last contact Todd Hayes had with the Respondent Legal Father was on March 22, 2000 through a telephone conversation, and prior to that, Hayes had only three brief telephone conversations with said Respondent; that said Respondent had originally stated to Hayes that he would relinquish his parental rights to the minor child; that the said Respondent has never provided any love, nuturance, or support for the minor child and has filed no motion with the court requesting visitation with said child.

16. That the Respondent Legal Father testified in this matter; that he resides in Ohio with his son, Casey, his fiancée, Micaela Montgomery, and her children; that he first became aware of the existence of the minor child on October 26, 1999 when he was served with child support papers; that he began to seek information about the minor child that day, specifically, by contacting Mr. Rhodes of the Child Support Enforcement Agency; that on October 27, 1999 the Respondent Legal Father contacted the Ohio Legal Aid in order to obtain a lawyer to represent him in the child support action, and he was appointed an attorney.

17. That the Respondent Legal Father testified in that action that he appeared in Court in Ohio two or three times and was represented by an attorney; that at his last court appearance in said case in early March of 2000, the child support case was dismissed due to it being determined that he was not the biological father of the minor child; that said Respondent testified that he requested a continuance of said case in order [to see for] himself . . . what the DNA testing showed.

. . . .

19. That the Respondent Legal Father admitted that he has never seen the minor child and has never provided any love, nurtu-

rance, or support for the minor child.

20. That the Respondent Legal Father is not employed and receives $700.00 a month on SSI-SSDI. The Respondent Legal Father was diagnosed approximately twelve to thirteen years ago with Schizophrenia and took medications for the illness. The Respondent Legal Father took himself off his medication more quickly than his doctor advised. The Respondent Legal Father sees a psychiatrist once every six months. The Respondent Legal Father admitted to difficulties with nerves and some paranoia when around crowds of people and that he was hospitalized in the 1980's for six months under a voluntary placement. After his release from the hospital he spent some time in a half[-]way house.

21. That the Respondent Legal Father is unaware of the special needs of the minor child, but indicated that he would provide care for her. The Respondent Father wants placement of the child because Casey is the child's half[-]sibling.

. . . .

23. That Micaela Montgomery, fiancée of the Respondent Legal Father, and Brigid Montgomery, her daughter, testified that the Respondent Father is a good father.

. . . .

25. That the Respondent Legal Father is the legal parent only and has no biological relationship to the minor child. The child was conceived after the Respondent Mother and respondent Legal Father had separated. The Court cannot find that the Respondent Legal Father willfully left the minor child in foster care for twelve months pursuant to N.C.G.S. 7B-1111(2) in that he was not aware of the child's existence until October 1999.

26. That the Respondent Legal Father filed an answer to the termination of parental rights petition herein on May 20, 2000; he had made no appearances in court regarding the minor child in her underlying juvenile action; that he has no relationship whatsoever with any of the children who are the subject matter of this termination of parental rights proceeding; that after learning that he might be the father of the child in October of 1999, he only stated to the social worker for the Buncombe County Department of Social Services that he desired visitation if it were shown that

IN RE MILLS

[152 N.C. App. 1 (2002)]

he was the biological father of Ashley; that after learning that he was shown by paternity testing not to be the biological father of the minor child at some time in the spring of 2000, he made no requests of the Department or any other individual for visitation, contact or any other involvement with Ashley; that he was served with this petition to terminate his parental rights by certified mail on April 17, 2000.

The court made identical findings as to the other two children. Based on the above-stated findings, the trial court concluded that respondent had neglected the minor children, and that it was in the best interests of the children for respondent's parental rights to be terminated. The trial court therefore terminated respondent's parental rights to all three minor children on 2 May 2001 in three separate judgments. Respondent appeals from these judgments, which we now review.

---

[1] Respondent argues that there was no clear, cogent and convincing evidence that he neglected the children, and that the trial court therefore erred in otherwise finding. For the reasons stated herein, we affirm in part and reverse in part the judgments of the trial court.

Under the North Carolina General Statutes, a termination of parental rights proceeds in two stages: (1) the adjudicatory stage, governed by section 7B-1109, and (2) the dispositional stage, governed by section 7B-1110. *See* N.C. Gen. Stat. § § 7B-1109, 7B-1110 (2001); *In re Carr*, 116 N.C. App. 403, 406-07, 448 S.E.2d 299, 301 (1994). During the adjudicatory phase, the petitioner must show by "clear, cogent and convincing evidence" the existence of one or more of the statutory grounds for termination of parental rights set forth in section 7B-1111. N.C. Gen. Stat. § 7B-1109(f) (2001). This Court reviews the adjudicatory phase to determine whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and, if so, whether these findings in turn support the trial court's conclusions of law. *See In re Ballard*, 63 N.C. App. 580, 586, 306 S.E.2d 150, 154 (1983), *reversed on other grounds*, 311 N.C. 708, 319 S.E.2d 227 (1984). Findings for which there exists competent evidence are binding on appeal, even where there is evidence to the contrary. *See In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). "If a conclusion that grounds exist under any section of the statute is supported by findings of fact based on clear, cogent, and convincing evidence, the order terminating parental rights must be affirmed." *Ballard*, 63 N.C. App. at 586, 306 S.E.2d at 154.

IN RE MILLS

[152 N.C. App. 1 (2002)]

Once the trial court concludes that one or more of the statutory grounds exist, it proceeds to the dispositional phase to determine whether parental rights should be terminated. *See* N.C. Gen. Stat. § 7B-1110(a); *Carr*, 116 N.C. App. at 406-07, 448 S.E.2d at 301. During this phase, the trial court exercises its discretion in determining whether termination of the parental rights is in the child's best interest. *See Carr*, 116 N.C. App. at 407, 448 S.E.2d at 301.

In the instant case, the trial court found and concluded that respondent neglected all three children as set forth in section 7B-1111(a)(1) of the General Statutes. Under this section, a "juvenile shall be deemed to be . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1). A neglected juvenile is one

who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2001). "An individual's 'lack of parental concern for his child' is simply an alternate way of stating that the individual has failed to exercise proper care, supervision, and discipline as to that child." *Williamson*, 91 N.C. App. at 675, 373 S.E.2d at 320. Further, in determining whether neglect has occurred, "the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship." *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982).

Respondent asserts that no clear, cogent, and convincing evidence exists to support the trial court's finding that he neglected the children. We disagree. The evidence presented at trial clearly indicated that respondent, after learning of the children's existence, displayed merely minimal interest in their welfare. At trial, Todd Mitchell Hayes ("Hayes"), a social worker with DSS, testified that when he spoke with respondent in January of 2000, respondent expressed some interest in visitation rights, but only if the paternity test showed that he was Ashley's biological father. Respondent also indicated at that time that he would relinquish his rights as to the children if the tests showed that Ashley was not his daughter. When Hayes spoke to respondent on 22 March 2000 in order to pursue the relinquishment of

his parental rights, moreover, respondent informed him that, "he was wanting to wait until everything was resolved." Respondent spoke with Hayes, the caseworker assigned to the children's case, on the telephone briefly only three or four times. Hayes confirmed that respondent never requested visitation rights, nor has respondent ever filed a motion seeking visitation rights with the children, despite being represented by counsel. Respondent has never paid any child support for any of the children, and he did not send the children any gifts or other type of acknowledgment on their birthdays.

We conclude that the above-stated evidence amply supports the trial court's findings and conclusion that respondent neglected the children after learning of their existence. We agree with respondent, however, that the trial court erred in finding and concluding that respondent "never appeared in court in the underlying juvenile file concerning his child." The record does not indicate that respondent was served with notice of the adjudication of neglect, and it appears that respondent was not aware of the children's existence until after the adjudication hearing. Thus, it was error by the trial court to conclude that respondent neglected the children on the basis of his failure to appear at the adjudication hearing. We therefore reverse in part the judgments of the trial court and remand the case for the singular purpose of striking the erroneous finding that respondent "made no appearances in court regarding the minor child in her underlying juvenile action" and the conclusion that respondent neglected the children because he "never appeared in court in the underlying juvenile file." In light of the other, above-summarized evidence, however, the erroneous finding was not necessary to the trial court's conclusion that respondent neglected the children. We therefore hold that there was clear, convincing and cogent evidence to support the trial court's remaining findings of fact, and that these findings, in turn, support the court's conclusion that respondent neglected the children.

[2] We further conclude that the trial court properly determined that it was in the children's best interests that respondent's parental rights be terminated. The evidence showed that all three children are thriving in stable foster care, where their particular medical and behavioral conditions are being properly addressed. Respondent has no biological connection to any of the children, and suffers from a significant mental condition. It was well within the trial court's discretion to determine that the children's interests would be better served by remaining in a familiar and stable home environment rather than

moving to an alien state to live with strangers only distantly related to them. We therefore hold that the trial court did not abuse its discretion in terminating respondent's parental rights during the dispositional phase of the hearing.

In conclusion, we reverse in part and affirm in part the judgments of the trial court terminating respondent's parental rights to Ryan Mills, Ashley Mills, and Samantha Grigg. We remand the judgments to the trial court and hereby direct the court to strike those portions of the judgments finding and concluding that respondent neglected the children by failing to appear at the underlying juvenile actions. We otherwise affirm the judgments of the trial court.

Affirmed in part, reversed in part, and remanded.

Judge WYNN concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge, concurring in part and dissenting in part.

I concur with the majority's opinion that the trial court erred by concluding that Richard N. Mills ("respondent") neglected Ashley Nicole Mills, Samantha McNeill Grigg, and Ryan Alexander Mills (collectively "minor children") based on his failure to appear at the underlying juvenile action adjudicating the minor children neglected. I respectfully dissent from the majority's holding that clear, cogent and convincing evidence exists to support the trial court's remaining findings of fact. I would reverse the judgments of the trial court.

## I. Termination of Parental Rights

Trial courts conduct termination of parental rights proceedings in two phases: (1) the adjudication phase governed by N.C.G.S. § 7B-1109 and (2) the disposition phase governed by N.C.G.S. § 7B-1110. *In re Mitchell*, 148 N.C. App. 483, 488, 559 S.E.2d 237, 241 (2002) (citations omitted). The petitioner, DSS, carries the burden of proof to show that one or more of the statutory grounds set forth in G.S. § 7B-1111 exists by clear, cogent, and convincing evidence during the adjudicatory phase. *Id.* (citing N.C. Gen. Stat. § 7B-1109(e)-(f) (1999)). We review the adjudicatory phase to determine whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and, if so, whether these findings support the trial court's conclusions of law. *In re Ballard*, 63 N.C. App. 580, 306

**IN RE MILLS**

[152 N.C. App. 1 (2002)]

S.E.2d 150 (1983); *modified on other grounds*, 311 N.C. 708, 319 S.E.2d 227 (1984).

Only after the trial court finds that one or more of the statutory grounds exists may the trial court proceed to the disposition phase to determine whether termination of the parent's rights are in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2001); *Mitchell*, 148 N.C. App. at 488, 559 S.E.2d at 241; *In re Carr*, 116 N.C. App. 403, 448 S.E.2d 299 (1994). At the disposition phase, the trial court must exercise its discretion to determine whether termination of parental rights is in the child's best interest. *Id.*; *see also In re Tyson*, 76 N.C. App. 411, 419, 333 S.E.2d 554, 559 (1985).

### II.  Respondent's Alleged Neglect

The trial court found that respondent neglected all three children as provided in N.C. Gen. Stat. § 7B-1111(1) (2001). Neglect was the only statutory ground the trial court found to terminate respondent's parental rights.

The trial court, using identical language in three separate judgments, concluded that:

the Respondent Legal Father neglected the minor child pursuant to N.C.G.S. § 7B-1111(1) after he learned of the existence of the minor child in that he never visited with the minor child, he never appeared in court in the underlying juvenile file concerning the child, he has only had contact with the social worker concerning his child three times since October 1999 and the last contact on March 22, 2000, and it is reasonable to assume that she [sic] would continue to neglect the minor child if the child were returned to her [sic] care and supervision.

The majority's opinion lists findings of fact found by the trial court. The majority's opinion concludes that "[t]he evidence presented at trial clearly indicated that respondent, after learning of the children's existence, displayed merely minimal interest in their welfare." The majority's conclusion is based entirely on the testimony of Todd Mitchell Hayes ("Hayes"), a social worker with the Department of Social Services ("DSS"). The trial court made no findings on credibility of the witness or the probative value of the evidence. Respondent rebutted every critical point made by Hayes, offered an alternative explanation, and submitted additional evidence. The majority opinion does not mention any of respondent's testimony or other evidence.

The trial court's findings of fact, and the majority's reliance thereon, to support the conclusion that respondent neglected the minor children can be summarized as follows: (1) respondent is the legal parent only and has no biological relationship to the children, (2) the children were conceived after respondent and Charlene separated, (3) respondent has no relationship with the minor children, (4) six months after respondent separated from Charlene he ceased further contact with her, (5) respondent has never seen the minor children, (6) respondent indicated in a telephone call that he might relinquish his legal rights to the children, (7) respondent never provided any love, nurturance, or support for the minor children, (8) respondent never requested to visit with the children even after finding out that he was the legal father of the minor children, (9) respondent did not file a motion with the court requesting visitation with the children, (10) respondent did nothing other than appear in Court in Ohio concerning Ashley's child support action after DNA testing statistically excluded him from paternity, (11) respondent told a social worker on the telephone that he "desired visitation if it were shown that he was the biological father of Ashley," (12) respondent made no requests for visitation after paternity tests statistically excluded him as the biological father of Ashley, (13) respondent is not employed and receives $700.00 per month SSI, (14) respondent was diagnosed twelve to fifteen years ago with Schizophrenia, (15) respondent visits a psychiatrist every six months, (16) respondent has difficulty with nerves, and (17) respondent is unaware of the special needs of the children.

### III. Respondent's Evidence

None of the findings of fact offered in support of the conclusion that defendant neglected his children are supported by clear, cogent, and convincing evidence. The first four findings of fact listed above are irrelevant given respondent's presumption of paternity that was unchallenged and not rebutted. The last four are absolutely irrelevant to whether defendant neglected his children, and are more directed toward a "best interest" analysis, which is not reached unless grounds to terminate respondent's parental rights are found to exist by clear, cogent, and convincing evidence. Rights of parents cannot be abrogated or balanced until a parent is found to have acted in a manner inconsistent with his or her constitutionally protected status. *See Adams v. Tessener*, 354 N.C. 57, 62, 550 S.E.2d 499, 503 (2001).

**IN RE MILLS**

[152 N.C. App. 1 (2002)]

## A. Respondent's Presumption of Paternity

"North Carolina courts have long recognized that children born during a marriage, as here, are presumed to be the product of the marriage." *Jones v. Patience*, 121 N.C. App. 434, 439, 466 S.E.2d 720, 723 (1996) (citing *Eubanks v. Eubanks*, 273 N.C. 189, 197, 159 S.E.2d 562, 568 (1968); 3 Robert E. Lee, *North Carolina Family Law*, § 250 (4th ed. 1981) (citing cases dating back to 1862)). " '[T]he presumption is universally recognized and considered one of the strongest known to the law.' " *Id.* (quoting *In re Legitimation of Locklear*, 314 N.C. 412, 419, 334 S.E.2d 46, 51 (1985); citing 3 Lee, *North Carolina Family Law*, § 250); *see also* 3 Lee, *Family Law*, § 16.11 at 16-28 (5th ed. 2000). Among the reasons for this long-standing and consistent rule is "[t]he marital presumption reflects the force of public policy which seeks to prevent 'parent[s] from bastardizing [their] own issue.' " *Id.* (quoting *State v. Rogers*, 260 N.C. 406, 408, 133 S.E.2d 1, 2 (1963)).

During all proceedings before the trial court, DSS considered respondent as the legal father. The trial court found that respondent was, in fact, the legal father of the minor children. Respondent's standing as the legal father of the three minor children is uncontested.

## B. Respondent's Efforts

As to findings of fact five through twelve, respondent was sued for child support on 26 October 1999. Respondent testified during the termination hearing that he immediately called DSS upon learning that he was identified as Ashley's father. Respondent testified that during that phone call he learned for the first time that two other children, Ryan and Samantha, existed. Respondent testified that he experienced difficulty obtaining any information from DSS, and that he received mixed messages from DSS after he inquired about obtaining custody of all the minor children.

Respondent testified that it would be best for all the minor children to live in his home with Casey, their brother, rather than to subsist in different foster homes, separated from each other and living with strangers. Casey is the closest familial link to all the children because they share a common mother. All children except Samantha bear respondent's last name. Respondent testified that DSS informed him that it was in the "children's best interest" for none of them to have any contact with respondent. Respondent also testified that DSS

IN RE MILLS

[152 N.C. App. 1 (2002)]

informed him that North Carolina courts would not allow him to obtain custody of all three minor children.

As to finding of fact five, seven, eight, ten, eleven, and twelve, respondent testified that DSS prevented or thwarted his numerous efforts to visit his minor children. He testified that DSS repeatedly told him that he would have to wait until a hearing to do anything. Respondent also testified that even after the DNA excluded him as the biological father of Ashley, he continued to seek custody of the three minor children. At trial respondent was asked during cross-examination: "It's also true is it not, that you had no phone contact with these children since [learning of their existence]." Respondent answered: "I wasn't allowed, nobody would give me the numbers or addresses to even—I asked to write them a letter to let them know about me and Casey, to send pictures, to do whatever I could do, and I was always denied." This testimony was not refuted.

As to finding of fact seven, respondent testified that once he learned of the existence of the three minor children, he offered to financially support all of them. DSS failed to co-operate. Respondent's telephone bill, introduced into evidence, indicated over twenty phone calls placed from his home in Ohio from 21 January to 5 May 2000 concerning his minor children in North Carolina.

### IV. Clear, Cogent and Convincing Evidence

"A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." *Lassiter v. Department of Social Services of Durham County,* 452 U.S. 18, 27, 68 L. Ed. 2d 640, 650 (1981); *See also In re Clark,* 303 N.C. 592, 600, 281 S.E.2d 47, 53 (1981). "The burden of DSS on the merits of the petition is a heavy one." *Clark,* 303 N.C. at 604, 281 S.E.2d at 55.

"The burden on DSS to prove facts which would support termination is by 'clear, cogent and convincing evidence.'" *Matter of Bradley,* 57 N.C. App. 475, 480, 291 S.E.2d 800, 803 (1982) (citation omitted). "Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." *North Carolina State Bar v. Sheffield,* 73 N.C. App. 349, 354, 326 S.E.2d 320, 323 (1985) (citing *In re Montgomery,* 311 N.C. 101, 316 S.E.2d 246 (1984)). "It has been defined as 'evidence which should fully convince.'" *Id.* (quoting *Williams v. Blue Ridge Bldg. & Loan Ass'n,* 207 N.C. 362, 177 S.E. 176 (1934)).

North Carolina courts require the State to present strong evidence to support termination of parental rights. *See e.g. In re Moore*, 306 N.C. 394, 405, 293 S.E.2d 127, 133 (1982) (held that three grounds for termination were supported by clear, cogent, and convincing evidence, and as to one of these grounds "there was no evidence to the contrary"); *In re Nesbitt*, 147 N.C. App. 349, 355-56, 555 S.E.2d 659, 664 (2001); (held that the evidence was "neither plenary, nor overwhelming, nor uncontradicted" to support termination of parental rights); *Alleghany County Dept. of Social Services v. Reber*, 75 N.C. App. 467, 331 S.E.2d 256, 258 (1985) (court held case law requires stronger evidence to terminate parental rights); *In re Adcock*, 69 N.C. App. 222, 227, 316 S.E.2d 347, 350 (1984) (court found the totality of evidence to support termination "was plenary, clear, cogent and convincing"); *In re Biggers*, 50 N.C. App. 332, 343, 274 S.E.2d 236, 243 (1981) (court found "overwhelming and uncontradicted evidence" to support termination).

Here, the additional evidence provided by respondent is uncontradicted and fully explanatory. Respondent's credibility was not impeached, nor did the trial court find him unbelievable. The trial court was not free to disregard or ignore contradictory, explanatory, or other competent evidence offered by respondent. When respondent's evidence is considered alongside the testimony of Hayes, there is no evidence which is "overwhelming," "uncontradicted," "plenary," or "fully convincing" to support the trial court's findings of fact. The majority's holding eviscerates the clear, cogent, and convincing standard in this case. The majority's opinion would reduce the clear, cogent and convincing requirement to nothing more than a preponderance of the evidence standard. Such a holding places DSS on equal footing with a parent's constitutionally protected status, which is contrary to well-established precedent and is impermissible.

### V. Conclusion

I concur with that portion of the majority's opinion which reverses and remands the trial court's judgments. DSS failed to prove that respondent's conduct is inconsistent with his protected status as a legal parent of the minor children. No findings of fact are supported by clear, cogent, and convincing evidence to uphold the trial court's conclusion that respondent neglected the minor children. Respondent's testimony and other evidence presented, the great majority of which is uncontradicted and undisputed, shows substantial evidence contrary to the trial court's findings of fact.

After review of the entire record, I would hold that the trial court's findings of fact are not supported by clear, cogent, and convincing evidence. I would reverse the remaining parts of the trial court's judgments terminating respondent's parental rights.