CALABRIA, Judge.
C.U. ("respondent-mother") appeals the order of the Brunswick County District Court terminating her parental rights and the rights of J.K. ("respondent-father") (collectively "respondents") with respect to their juvenile-child ("M.K."). We affirm.
M.K. was born on 14 November 2000. When M.K. was two months old, the Brunswick County Department of Social Services ("DSS") became involved with this family when their inspections revealed that respondents left M.K. in soiled diapers, rarely bathed her, and left her in a swing for extended periods. On 15 May 2001, respondent-mother signed a protection plan allowing M.K. to stay with her paternal aunt. About one week later, respondent-mothernotified DSS that she had moved to Maryland. On 6 June 2001, DSS learned that respondent-father intended to take M.K. to Maryland to be with respondent-mother. On 7 June, DSS petitioned for and obtained custody of M.K. and subsequently placed her in foster care.
On 23 July 2001, a Guardian ad Litem was appointed for M.K. and a hearing was held with all parties represented by counsel. M.K. was adjudicated neglected and remained in the custody of DSS. Evidence at the hearing showed that conditions in the respondents' home improved over the course of several sessions with a Family Preservation worker but deteriorated after the sessions ended. Respondents continued to leave M.K. in a swing for such extended periods of time that her limbs had stiffened and her upper body muscles had not properly developed. In addition, the back of her head was flat, and she had significant hair loss. After two to three weeks of "exercise" recommended by M.K.'s treating physician and administered by her caregivers, M.K. attained a normal range of mobility as well as upper body strength. Furthermore, at the time of the hearing, her head had attained a normal shape.
On 17 December 2001, DSS continued reunification efforts and recommended that respondent-mother secure and maintain employment and pay child support. The 17 December 2001 court order noted that efforts were being made to transfer jurisdiction to Maryland, via the Interstate Compact on the Placement of Children, and to place M.K. with respondent-mother. However, in late January 2002, Maryland authorities reported respondents involvement in a domesticviolence incident, which lead to charges against respondent-father. As a result, the Maryland authorities could not recommend the placement of M.K. with respondent-mother. Soon after the domestic violence incident, respondent-mother and one of M.K.'s two siblings moved to Virginia to live with M.K's maternal grandmother (the "maternal grandmother").
At the 11 March 2003 hearing, respondent-mother testified that throughout the time M.K. was in DSS custody she was capable of working, and her 2001 tax return reported $2,365.00 in earnings. In March and April 2002, respondent-mother was employed as a cashier and in April earned $500.00. She resigned the cashier position and was unemployed until August or September 2002. At the time of the hearing, she was still employed and earned a little over $1000.00 per month. Her expenses included monthly payments of $20.00 for rent to the maternal grandmother, $151.00 for a car loan, $116.00 for car insurance, and between $100.00 and $150.00 for groceries. She also managed to deposit $1300.00 in a checking account and approximately $100.00 in a savings account.
Respondent-mother understood she was supposed to pay child support but failed to make any payments to DSS or M.K.'s foster parents. She testified that she called the child support office several times, left messages, never received a return call, and then called her assigned social worker about the child support office's failure to contact her. Her social worker testified she had no record of and did not recall respondent-mother calling her about difficulties in contacting the child support office. M.K.'sfoster parents spent more than the $315.00 per month provided by DSS for M.K.'s support.
On 10 March 2003, the trial court terminated the parental rights of respondents on the basis of (1) neglect, (2) willfully leaving M.K. in foster care, and (3) willfully failing to pay a reasonable portion of M.K.'s support. Only respondent-mother appeals.
A proceeding to terminate parental rights consists of two stages: (1) the adjudicatory stage, under N.C. Gen. Stat. § 7B-1109 (2003), and (2) the dispositional stage, under N.C. Gen. Stat. § 7B-1110 (2003). In re Mills, 152 N.C. App. 1, 6, 567 S.E.2d 166, 169 (2002). At the adjudicatory stage, "the petitioner must show by `clear, cogent and convincing evidence' the existence of one or more of the statutory grounds for termination of parental rights set forth in [N.C. Gen. Stat. §] 7B-1111." Id. (quoting N.C. Gen. Stat. § 7B-1109(f)). Accordingly, in reviewing this stage, we determine "whether the trial court's findings of fact are supported by clear[,] [cogent] and convincing evidence and whether the findings of fact support the conclusions of law." In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). If the trial court finds one or more grounds for termination, "it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." Id. "[T]he court shall issue [a dispositional] order terminating the parental rights, unless it . . . determines that the best interests of the child require otherwise." In re Matherly, 149 N.C. App.452, 454, 562 S.E.2d 15, 17 (2002). "We review the trial court's decision to terminate parental rights for abuse of discretion." Anderson, 151 N.C. App. at 98, 564 S.E.2d at 602.
Respondent-mother first asserts the trial court erred in its adjudication order by finding that clear, cogent, and convincing evidence supported three grounds for terminating her parental rights under N.C. Gen. Stat. § 7B-1111(a) (2003): (a)(1), abuse and neglect; (a)(2), "willfully [leaving] the juvenile in foster care or placement outside the home"; and (a)(3), willfully failing to pay a reasonable portion of the juvenile's support. If any one of the three grounds is supported by clear, cogent, and convincing evidence, the adjudication order should be affirmed. In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982).
Under N.C. Gen. Stat. § 7B-1111(a)(3), the trial court may terminate parental rights where:
The juvenile has been placed in the custody of a county department of social services . . . or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion [for termination], has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
"The word `willful' means something more than an intention to do a thing. It implies doing the act purposely and deliberately." In re Maynor, 38 N.C. App. 724, 726, 248 S.E.2d 875, 877 (1978). In the context of N.C. Gen. Stat. § 7B-1111(a)(3), nonpayment of support constitutes "a failure to pay a `reasonable portion' . . .[when] respondent [was] able to pay some amount greater than zero." In re Bradley, 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982).
With regard to N.C. Gen. Stat. § 7B-1111(a)(3), the trial court made the following pertinent findings of fact:
10. [Respondent-mother] has worked several jobs during the time frame of [M.K.] being placed in [DSS] custody and the filing of the Termination of Parental Rights Petition, however, she has never provided financial assistance to [DSS] or the foster parents since [M.K.] was taken into [DSS] custody.
. . . .
12. On at least one occasion prior to the filing of this action, [DSS] informed [respondent-mother] that she needed to contact the child support division and establish child support payments on behalf of [M.K.].
. . . .
14. [Respondent-mother] was employed with several employers prior to the filing of the petition and was able to provide at least minimal child support on behalf of [M.K.].
15. . . . . [Respondent-mother] has willfully neglected to lend support and maintenance on behalf of the minor child.
. . . .
22. [M.K.] has been in the foster home for over six (6) months and [respondents] have willfully failed to pay any support toward her care although they are both physically and mentally as well as financially able to pursuant to N.C.G.S. § 1111(a)(3)[sic].
Testimony at the hearing constituted clear, cogent, and convincing evidence supporting the above findings of fact. Respondent-mother testified that during the six months prior to the filing of the petition she was employed for approximately two months earning up to $500.00 per month and was capable of working throughout the time M.K. remained in the legal and physical custodyof DSS. She further testified that her social worker gave her the telephone number to the child support office to arrange for support payments and that she tried to call several times, did not receive return calls, and then called her social worker about her difficulty in contacting the child support office. Her social worker however testified she had no record of such a call from respondent-mother and did not recall having received such a call. On the basis of this evidence, the trial court could properly conclude, that although respondent-mother had some income during the six months preceding the filing of the petition for termination, which gave her the ability to pay an amount greater than zero for the support of M.K., she willfully failed to send any support while understanding DSS required her to do so. See In re T.D.P., ___ N.C. App.___, 595 S.E.2d 735 (2004) (holding that, although earning meager wages in the prison kitchen, the respondent nevertheless "had an ability to pay some portion of the costs of [his child's] foster care[,]" and this constituted "sufficient grounds . . . for termination of [his] parental rights under N.C. Gen. Stat. § 7B-1111(a)(3)").
Nonetheless, respondent-mother contends the instant case is similar to In re Faircloth, 161 N.C. App. 523, 588 S.E.2d 561 (2003) in which this Court reversed a trial court's decision to terminate parental rights under N.C. Gen. Stat. § 7B-1111(a)(3) because there were no "findings or evidence in the record that respondent-mother could pay some amount greater than zero towards the cost of care for children during [the six months prior to thefiling of the petition for termination] . . . ." Id. at 526, 588 S.E.2d at 564. In contrast, as discussed above, the instant case contains clear, cogent, and convincing evidence in the form of respondent-mother's testimony that she was employed for a portion of the six months prior to the filing of the petition and was able to pay an amount greater than zero toward the support of M.K.
Respondent-mother further contends that she was not required to pay child support because DSS never initiated child support proceedings and because there was no child support order establishing what would have been a reasonable portion of the cost of care. Initially, we note it is well established under North Carolina law that "[a]ll parents have the duty to support their children within their means . . . ." In re Biggers, 50 N.C. App. 332, 339, 274 S.E.2d 236, 241 (1981). In In re Clark, 303 N.C. 592, 281 S.E.2d 47 (1981), our Supreme Court interpreted the constitutionality of N.C. Gen. Stat. § 7A-289.32(4), the predecessor to N.C. Gen. Stat. § 7B-1111(a)(3), and held:
[T]he phrase `reasonable portion of the cost of care for the child' as used in the context of the Act is, by all normal standards, understandable by people of common intelligence without any necessity of guessing as to its meaning or differing as to its application. The phrase contains words of such common usage and understanding as to give parents notice of their responsibilities and of the type of conduct which is condemned, to-wit, failure to provide a reasonable portion of the cost of caring for the child.
Id. at 606, 281 S.E.2d at 56. Furthermore, N.C. Gen. Stat. § 7B-1111(a)(3) does not require that a reasonable amount must be set by a trial court, or even that the parent ignore a court order to paychild support, but that the parent "for a continuous period of six months next preceding the filing of the petition or motion, [had] willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." Moreover, as discussed above, respondent-mother understood she was supposed to pay child support. In addition, the trial court's 17 December 2001 order gave her further notice of her duty to pay child support by incorporating by reference the DSS court summary recommending she do so. Accordingly, we will not entertain the contention that she was not required to pay child support because no child support proceedings were initiated and because the court did not order her to pay a reasonable portion of the costs or specify the amount.
Respondent-mother next asserts the trial court committed an abuse of discretion by concluding that termination of her parental rights was in the best interests of M.K. Evidence at the hearing showed that respondent-mother neglected M.K.'s needs while M.K. was under her care, visited M.K. only on hearing dates for less than one and one-half hours each visit, sent no correspondence or gifts to M.K. with the exception of some toys on one visit, tended to be employed intermittently for only a few months at a time, was dependent on the maternal grandmother for housing at the time of the hearing, tended to enter into abusive relationships with males, and failed to provide any child support for M.K. even though she had the ability to provide at least a minimal amount. Moreover, M.K. thrived after leaving respondent-mother's care and being placed infoster care. In light of this evidence, we hold the trial court's determination to terminate respondent-mother's parental rights was in the best interests of M.K. and not "so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (defining abuse of discretion).
For the foregoing reasons, we affirm the trial court's order terminating respondent-mother's parental rights on the basis of N.C. Gen. Stat. § 7B-1111(a)(3).
Affirmed.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).