IN THE MATTER OF: M.T.B., C.G.B, minor children.
No. COA07-398
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication
Wake County Attorney's Office, by Corinne G. Russell and Al Singer, for Petitioner-Appellee Wake County Human Services.
Pamela Newell Williams for Guardian ad Litem.
Duncan B. McCormick for Respondent-Appellant.
McGEE, Judge.
C.B. (Respondent-Mother) appeals from an order terminating her parental rights with respect to her minor children, M.T.B. and C.G.B. (the children). On appeal, Respondent-Mother makes three arguments: (1) the trial court erred by taking judicial notice of previous court orders and reciting findings from those prior court orders; (2) the trial court erred by concluding Respondent-Mother neglected the children; and (3) the trial court erred by concluding Respondent-Mother abused the children. We affirm.
Respondent-Mother and the children's father each had sought custody of the children in a prior civil action and the father was granted custody in 2003. The children's father was shot on 24 March 2006 in the children's presence. He died the following day from gunshot wounds. The record reflects Respondent-Mother was charged with his murder and was incarcerated in the Wake County jail. Wake County Human Services (Petitioner) filed juvenile petitions on 31 March 2006 alleging that the children were abused, neglected, and dependent. The children were placed with a paternal aunt and uncle. The trial court entered a "Consent Order On Adjudication and Disposition" signed by Respondent-Mother on 24 May 2006. In the consent order, the trial court adjudicated the minor children to be neglected, dependent, and abused. The trial court also ordered no visitation between Respondent-Mother and the children. Respondent-Mother thereafter filed a Rule 60(b) motion to set aside the consent order, arguing that she did not agree to the provision prohibiting her from visiting the children. The trial court denied Respondent-Mother's motion and she did not appeal that decision.
Petitioner filed a motion to terminate Respondent-Mother's parental rights on 16 October 2006 alleging four grounds for termination: (1) Respondent-Mother neglected the children and this neglect would likely be repeated in the future if the children were placed in her care; (2) Respondent-Mother was incapable of providing proper care and supervision of the children; (3) Respondent-Mother had abused the children and would likely continue to abuse them; and (4) Respondent-Mother committed murder or voluntary manslaughter of the children's father. At the close of the hearing, Petitioner withdrew the fourth ground for termination. The trial court entered an order on 17 January 2007 concluding that Respondent-Mother "abused the children and it [was] probable that there would be a repetition of the abuse if the children were placed in [Respondent-Mother's] care." In addition, the trial court concluded that Respondent-Mother "neglected the children and it [was] probable that there would be a repetition of the neglect if the children were placed in [Respondent-Mother's] care." The trial court determined that termination of Respondent-Mother's parental rights would be in the best interests of the children, and ordered the termination of Respondent-Mother's parental rights. Respondent-Mother appeals.
Respondent-Mother first argues the trial court erred by taking judicial notice of prior court orders and by reciting findings of fact from prior court orders in its termination order. Such recitation, she contends, does not demonstrate the trial court's independent determination of the facts established by the evidence. We disagree.
We note that "a court may take judicial notice of earlier proceedings in the same cause." In re Byrd, 72 N.C. App. 277, 279, 324 S.E.2d 273, 276 (1985). In particular, prior orders adjudicating a juvenile neglected or abused are admissible in termination of parental rights cases. In re Ballard, 311 N.C. 708, 713-15, 319 S.E.2d 227, 231-32 (1984). When the trial court is sitting as fact finder, there is a presumption that the trial court has disregarded any incompetent evidence "' unless it affirmatively appears that [the trial court] was influenced thereby.'" In re L.C., ___ N.C. App. ___, ___, 638 S.E.2d 638, 642 (quoting Stanback v. Stanback, 31 N.C. App. 174, 180, 229 S.E.2d 693, 696 (1976), disc. review denied, 291 N.C. 712, 232 S.E.2d 205 (1977)), disc. review denied, 361 N.C. 354, ___ S.E.2d ___ (2007). Aside from Respondent-Mother's 60(b) motion challenging the consent order, there is no showing in the record that she objected to any evidence or findings in the custody case or in the juvenile case. The trial court's order of termination of parental rights stated that the findings of fact were based upon clear, cogent and convincing evidence. Moreover, nothing in the record indicates that the trial court failed to conduct the independent determination required when it took judicial notice of the prior orders entered in the matter. See In re J.W., 173 N.C. App. 450, 456, 619 S.E.2d 534, 540 (2005), aff'd per curiam, 360 N.C. 361, 625 S.E.2d 780 (2006); In re J.B., 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005). Therefore, Respondent-Mother failed to show the trial court erred by taking judicial notice of the prior court orders, and by relying upon them in its order terminating Respondent-Mother's parental rights.
By her remaining two arguments, Respondent-Mother contends the findings of fact are insufficient to support the trial court's conclusions of law that she neglected and abused her children, and that such neglect and abuse was likely to continue in the future if the children were returned to her care. "'The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law.'" In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004) (quoting In re Clark, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984)). A prior order adjudicating neglect is admissible evidence to show past neglect. Ballard, 311 N.C. at 713-15, 319 S.E.2d at 231-32. However, termination of parental rights may be not be determined solely on a finding of past neglect. Id. at 714-15, 319 S.E.2d at 231-32. A trial court must find either that neglect existed at the time of the termination hearing or that there was a reasonable likelihood of repetition of neglect if the children were returned to the parents. Id. at 715-16, 319 S.E.2d at 232-33; see also In re Reyes, 136 N.C. App. 812, 526 S.E.2d 499 (2000). This is especially true when a respondent has not had custody of the child for quite some time. Ballard, 311 N.C. at 713-15, 319 S.E.2d at 231-32. Similar principles apply to a finding of abuse. In re Alleghany County v. Reber, 75 N.C. App. 467, 469-70, 331 S.E.2d 256, 257-58 (1985), aff'd per curiam, 315 N.C. 382, 337 S.E.2d 851 (1986).
In this case, the trial court ordered termination on the grounds of neglect and abuse, and on the likelihood that such abuse and neglect would continue in the future if the children were returned to Respondent-Mother. A trial court may terminate parental rights based on abuse or neglect "if the [trial] court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1) (2005). A "neglected juvenile" is
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of [the] law.
N.C. Gen. Stat. § 7B-101(15) (2005). An "abused juvenile" is one whose parent "[c]reates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others[.]" N.C. Gen. Stat. § 7B-101(1)(e) (2005).
Evidence throughout the record supports a finding of past neglect and abuse. A domestic violence protective order was entered on 20 June 2002 protecting the children's father from Respondent-Mother after she threatened to kill him. In a subsequent hearing, Respondent-Mother was found to have wilfully violated custody provisions entered in two domestic violence actions. The children were placed in the temporary custody of Petitioner while psychological examinations were completed for the children and the parents. Respondent-Mother had made numerous claims that the children were abused by their father, which claims were never substantiated. The trial court found Respondent-Mother coached C.G.B. regarding sexual abuse allegations against the father to such an extent that C.G.B. could not distinguish between actual events and fictional events. Respondent-Mother was diagnosed with having "paranoid thinking and delusions," and her mental instability caused such trauma to the children as to constitute child abuse. Therapy was ordered for C.G.B. and mental health treatment for Respondent-Mother.
Following a hearing in 2003, the trial court found that Respondent-Mother continued to exhibit acute psychiatric distress in the period from late 2002 to the middle of 2003. During visits with Respondent-Mother, the children were aggressive toward her and generally regressed in their behavior. In August 2003, a treatment team recommended suspending Respondent-Mother's visitation with the children until another psychological evaluation could be completed. At that time, Respondent-Mother continued to hold to the belief that the children's father was sexually abusing the children, and she was unable to refrain from imposing that belief on the children. The trial court adopted the recommendation suspending visitation of Respondent-Mother and further ordered Respondent-Mother to stay at least 500 feet away from the children and their father and to refrain from attempting to call or otherwise communicate with them.
In subsequent orders, the children were found to be making progress in their respective therapy sessions. At later hearings, Respondent-Mother failed to provide any evidence of completing a full psychological examination or other mental health treatment. She also violated the court order by contacting the children, showing up at their school on numerous occasions, and attempting to break into the children's home. Respondent-Mother also moved intoan apartment close to the children, violating the 500 foot buffer ordered by the trial court. She admitted that she "crouched" by a bedroom window while the father put the children to bed. On 10 June 2005, Respondent-Mother broke a window at the father's house and attempted to crawl inside the house. The father called police, and Respondent-Mother was arrested. The children were upset by the incident and suffered emotional distress and anxiety.
In its final custody order dated 20 October 2005, the trial court granted custody to the children's father. The trial court also determined that Respondent-Mother had acted in a manner inconsistent with her constitutionally protected status as a parent. Respondent-Mother was ordered not to have any contact with the children, to remain at least 2000 feet away from the children, and to undergo a full psychological evaluation if she wanted reconsideration of these restrictions.
Following the shooting death of the children's father, the trial court found the children were "present at the shooting of [their] father, [and] [had] suffered severe emotional damage as a result." The trial court concluded the children were neglected "in that they do not receive proper care and supervision by their mother," and abused "in that their mother created serious emotional damage to them and has subjected the children to aggravated circumstances as defined in § 7B-101(2)."
In the disposition hearing order dated 6 July 2006, the trial court found that the children were in therapy to deal with the loss of their father and that their therapists recommended the children not have any contact with Respondent-Mother. The trial court found that Respondent-Mother had been attempting to contact the children by calling the home in which they were staying, and that such attempts created a risk of further emotional harm to the children. The trial court noted Respondent-Mother's violations of previous orders that she not have any contact with the children or their father. In addition, the trial court found that due to Respondent-Mother's mental health history and current incarceration, it was unlikely she would be able to establish a safe home for the children. The trial court therefore determined it was in the best interests of the children to cease reunification efforts and noted the permanent plan for the children was adoption. Respondent-Mother was ordered not to make telephone calls to the children and not to have any visitation with the children.
In the termination order dated 17 January 2007, the trial court made numerous findings of fact to support its conclusion that there existed a substantial probability that neglect and abuse would continue in the future. We find ample support in the record for those findings of fact. At the adjudicatory phase of the termination proceedings, Linda Clements testified that in her opinion as a social worker and "based on our knowledge that [Respondent-Mother] has not received any mental health treatment, we do not believe that conditions have improved where she would be able to provide a safe environment for the children." In response to a question regarding whether the pattern of neglect would continue if the children were placed in Respondent-Mother's care, Ms. Clements replied, "I don't have any knowledge that anything has changed." Regarding the current status of Respondent-Mother's mental health, the trial court found:
35. That in the hearing on the motion to terminate her parental rights, [Respondent-Mother] has provided no evidence that she has either completed a psychological evaluation or engaged in mental health treatment.
36. That this Court has previously found and decreed that [Respondent-Mother] has abused and neglected her minor children. [Respondent-Mother] has offered no evidence that she has had proper mental health treatment, was taking medication, whether she was seeing a therapist, or that her mental condition has improved. [Respondent-Mother] repeatedly violated previous court orders and in so doing continued to cause emotional harm to her children. It is reasonably likely that the pattern of abuse and neglect established by [Respondent-Mother] dating back to 2001 would be repeated if the children were placed in her care.
After a careful review of the record, prior court orders, and the trial court's findings and conclusions in its order terminating Respondent-Mother's parental rights, we find the trial court's findings of fact are supported by clear, cogent, and convincing evidence and the findings of fact support the conclusions of law. The lack of progress made by Respondent-Mother with regard to her mental health supports the likelihood that neglect and abuse of the children will continue should the children be returned to Respondent-Mother's care. In addition, the repeated violations of court orders over the years resulting in disturbances in the children's lives evidences a pattern which seems likely to continue. The fact that the children were traumatized by their father's shooting death also projects a likelihood that the children would suffer further serious emotional damage should they be returned to Respondent-Mother.
We conclude the trial court did not err in concluding Respondent-Mother abused and neglected the children and that such abuse and neglect would likely be repeated if the children were returned to her care. Accordingly, we affirm the order terminating Respondent-Mother's parental rights.
Affirmed.
Judges TYSON and ELMORE concur.
Report per Rule 30(e).