ANN ADAMS AND HUSBAND, DEXTER ADAMS, PLAINTIFFS v. ERIN CHRISTINA TESSENER, DEFENDANT v. EDWARD SCOTT LACKEY, INTERVENOR

No. 3PA01

(Filed 17 August 2001)

**Child Support, Custody and Visitation— custody dispute between natural father and maternal grandparents—conduct by father inconsistent with protected status—findings**

In a child custody contest between the maternal grandparents and the father, the trial court did not err in applying the "best interests of the child" standard and in determining that a child's interests were best served by maintaining primary physical custody with his grandparents where the child was born after his intoxicated parents met in a bar and had a single unprotected sexual encounter, with neither knowing the other's last name; the mother moved in with her parents for a time after the birth, even-

ADAMS v. TESSENER

[354 N.C. 57 (2001)]

tually moving out and consenting to her parents having physical custody of the child; the eventual conclusion that the mother was not fit to have custody was not disputed; and the trial court found that the father had done nothing after being told about the pregnancy and had not pursued any inquiry about the child after being told that he would be contacted about child support. While the Due Process Clause ensures that the government cannot unconstitutionally infringe upon a parent's paramount right to custody solely to obtain a better result, a parent's right to custody is not absolute and may be lost upon clear and convincing evidence that the parent is unfit or that the parent's conduct is inconsistent with his or her protected status. The trial court's findings in this case, viewed cumulatively, are sufficient to support its conclusion that the father's conduct was inconsistent with his protected interest in the child.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 141 N.C. App. 64, 539 S.E.2d 324 (2000), reversing and remanding an order entered by Owsley, J., on 3 June 1999 in District Court, Burke County. Heard in the Supreme Court 15 May 2001.

*LeCroy Ayers & Willcox, by M. Alan LeCroy, for plaintiff-appellants.*

*Crowe & Davis, P.A., by H. Kent Crowe, for intervenor-appellee.*

MARTIN, Justice.

This case involves a custody dispute between the mother, father, and maternal grandparents of a minor child, Aaron McLendon Adams (Aaron). Aaron was born on 15 February 1998 as a result of a single instance of unprotected sexual intercourse in July 1997 between defendant, Erin Christina Tessener (Tessener), and intervenor, Edward Scott Lackey (Lackey). In September 1997, Tessener informed Lackey that she was pregnant and that he was likely the father. Lackey took no action at that time.

Aaron was born prematurely and required extended hospitalization after birth. He had health problems and special medical needs in the first ten months of his life which required costly medical visits, daily medication, and constant attachment to a heart monitor. Aaron continues to have developmental difficulties.

After Aaron's birth, Tessener moved in with her parents, plaintiffs Ann and Dexter Adams, Aaron's grandparents. When Aaron was released from the hospital, he also lived with the Adams. Between February and April 1998, Tessener decided to leave the Adams' home. By "Consent Custody Agreement, Order and Confession of Judgment" filed 7 April 1998 (the Consent Judgment), Tessener and the Adams agreed that Tessener was not fit to have primary physical custody of Aaron. They further agreed that the Adams were fit and proper persons to have primary physical custody and that Aaron's best interests would be served thereby. Accordingly, the trial court ordered that Aaron's primary physical custody remain with the Adams.

In June 1998 Tessener informed Lackey that the Department of Social Services (DSS) would contact him about a potential child support obligation. Lackey made no inquiry concerning Aaron. DSS subsequently located Lackey and conducted DNA testing which conclusively determined that Lackey was Aaron's father. Lackey then executed a voluntary support agreement and has provided child support for Aaron since that time.

In October and November 1998, Lackey visited Aaron at the Adams' residence three times and removed him from the residence for one afternoon visit. On 30 October 1998 Tessener filed a motion in the cause seeking modification of the Consent Judgment. On 23 November 1998 Lackey filed a motion to intervene seeking custody of Aaron.

The matter was heard at the 2 February 1999 contested domestic session of District Court, Burke County. The trial court concluded that Tessener was not fit to have custody of Aaron. Tessener has not appealed that determination. The trial court further concluded that "[t]he actions and conduct of the Intervenor [Lackey] have been inconsistent with his protected interest in the minor child. Specifically, the conduct of Intervenor . . . proves that he is unfit to have the primary and legal care, custody and control of the minor child. Therefore, pursuant to *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528, the court must look to the best interests of the child." The trial court determined that the Adams were fit and proper to have custody of Aaron and that Aaron's best interests would be served thereby.

Lackey appealed to the Court of Appeals. The Court of Appeals held that the trial court's findings of fact were insufficient to support

the conclusion that Lackey was unfit to have custody of Aaron. *Adams v. Tessener*, 141 N.C. App. 64, 72, 539 S.E.2d 324, 330 (2000). The Court of Appeals stated that there was "a substantial body of evidence" supporting Lackey's fitness to have custody. *Id.* The Court of Appeals therefore reversed the trial court's order and remanded with instructions to award custody to Lackey. *Id.* We reverse the decision of the Court of Appeals.

This Court has recognized that the protection of the family unit is guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution. *Petersen v. Rogers*, 337 N.C. 397, 401, 445 S.E.2d 901, 903 (1994). The United States Supreme Court has recently reaffirmed that a parent enjoys a fundamental right "to make decisions concerning the care, custody, and control" of his or her children under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000). In *Troxel*, the United States Supreme Court held that a fit parent is presumed to act in the child's best interest and that there is "normally . . . no reason for the [s]tate to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69, 147 L. Ed. 2d at 58. Similarly, this Court has enunciated the fundamental principle that "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905.

We further elaborated on this principle in *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997). In *Price*, the defendant gave birth to a child out of wedlock and represented that the plaintiff was the father. *Id.* at 70-71, 484 S.E.2d at 529. When the defendant and the plaintiff separated, the child remained in the plaintiff's physical custody for approximately six additional years. *Id.* at 71, 484 S.E.2d at 529-30. A court-ordered blood test ultimately excluded the plaintiff as the biological father of the child. *Id.*

The trial court concluded that both the plaintiff and the defendant were fit and proper to have custody of the child. *Id.* at 71, 484 S.E.2d at 530. The trial court then determined that the child's best interests would be served by granting primary custody to the plaintiff. *Id.* The trial court stated, however, that it was precluded from granting custody to the plaintiff under *Petersen. Id.* Accordingly, the

trial court granted custody to the defendant. *Id.* The Court of Appeals affirmed the custody award. *Id.* at 71-72, 484 S.E.2d at 530.

In a custody proceeding between two natural parents (including biological or adoptive parents), or between two parties who are not natural parents, the trial court must determine custody based on the "best interest of the child" test. *Id.* at 72, 484 S.E.2d at 530. *Price,* however, involved a custody dispute "between a natural parent and a third party who is not a natural parent." *Id.* After acknowledging the *Petersen* presumption—that natural parents have a constitutionally protected, paramount right to custody of their children—we conducted a "due-process analysis in which the parent's well-established paramount interest in the custody and care of the child is balanced against the state's well-established interest in protecting the welfare of children." *Id.*

This Court reaffirmed that a natural parent has a constitutionally protected "liberty interest in the companionship, custody, care and control of his or her child." *Id.* at 74, 484 S.E.2d at 531. The Court noted, however, that while a fit and suitable parent " 'is entitled to custody of his [or her] child, it is equally true that where fitness and suitability are absent he [or she] loses this right.' " *Id.* at 75, 484 S.E.2d at 532 (quoting *Wilson v. Wilson,* 269 N.C. 676, 677, 153 S.E.2d 349, 351 (1967)). In short, the Court indicated that a parent's right to custody is not absolute. *Id.* at 76, 484 S.E.2d at 533.

The Court noted

"that the Due Process Clause would be offended '[i]f a [s]tate were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' *Smith v. Organization of Foster Families,* 431 U.S. 816, 862-63, 53 L. Ed. 2d 14, [46-47 (1977)] (Stewart, J., concurring in judgment)."

*Id.* at 78, 484 S.E.2d at 534 (quoting *Quilloin v. Walcott,* 434 U.S. 246, 255, 54 L. Ed. 2d 511, 520 (1978)). The Court thus determined when the "best interest of the child test" could be applied without violating the parent's constitutional rights:

A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she

will act in the best interest of the child. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. However, conduct inconsistent with the parent's protected status . . . would result in application of the "best interest of the child" test without offending the Due Process Clause. Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy.

*Id.* at 79, 484 S.E.2d at 534 (citations omitted).

Finding the situation in *Price* involved "a period of voluntary non-parent custody rather than unfitness or neglect," *id.* at 82, 484 S.E.2d at 536, this Court reversed and remanded "for a determination of whether defendant's conduct was inconsistent with the constitutionally protected status of a natural parent," *id.* at 84, 484 S.E.2d at 537. We further instructed that if the defendant's conduct was inconsistent with her constitutionally protected status, the trial court should determine custody using the "best interest of the child" standard. *Id.*

*Petersen* and *Price*, when read together, protect a natural parent's paramount constitutional right to custody and control of his or her children. The Due Process Clause ensures that the government cannot unconstitutionally infringe upon a parent's paramount right to custody solely to obtain a better result for the child. *See Troxel*, 530 U.S. at 72-73, 147 L. Ed. 2d at 61 ("the Due Process Clause does not permit a [s]tate to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made"). As a result, the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody, *see Jolly v. Queen*, 264 N.C. 711, 715-16, 142 S.E.2d 592, 596 (1965), or where the parent's conduct is inconsistent with his or her constitutionally protected status, *Price*, 346 N.C. at 84, 484 S.E.2d at 537. *See also* 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 224 (5th ed. 2000) (minor child should not be placed "in the hands of a third person except upon convincing proof that the parent is an unfit person to have custody of the child or for some other extraordinary fact or circumstance.")

Turning to the present case, we first note that in custody cases, the trial court sees the parties in person and listens to all the witnesses. *Pulliam v. Smith*, 348 N.C. 616, 625, 501 S.E.2d 898, 902-03 (1998). This allows the trial court to "detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges." *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979), *quoted in Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903. Accordingly, the trial court's findings of fact " 'are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary.' " *Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903 (quoting *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975)); *see also In re Orr*, 254 N.C. 723, 726, 119 S.E.2d 880, 882 (1961) ("Findings of fact made in the custody proceeding, when supported by competent evidence, are conclusive on appeal."); *Tyner v. Tyner*, 206 N.C. 776, 780-81, 175 S.E. 144, 147 (1934) (Clarkson, J., concurring) ("The findings of fact in the courts below are ordinarily conclusive on this Court and rightly so. The court below sees those most vitally interested, examines the evidence and is in a better position to render justice on all the facts.").

We are also cognizant of the fact that when a trial court "refuse[s] to award custody to either the mother or father and instead award[s] the custody of the child to grandparents or others . . . [the] 'parent's love must yield to another' " to serve the child's best interests. *Wilson*, 269 N.C. at 677-78, 153 S.E.2d at 351 (quoting *Holmes v. Sanders*, 246 N.C. 200, 201, 97 S.E.2d 683, 684 (1957)). Nonetheless, parents *normally* love their children and desire not only what is best for them, but also a deep and meaningful relationship with them. Therefore, the decision to remove a child from the custody of a natural parent must not be lightly undertaken. Accordingly, a trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence. *Cf. Santosky v. Kramer*, 455 U.S. 745, 747-48, 71 L. Ed. 2d 599, 603 (1982).

In the present case, the trial court specifically determined that Lackey's "actions and conduct . . . have been inconsistent with his protected interest in the minor child." The trial court made the following findings of fact:

5. Erin Christina Tessener—hereinafter referred to as Defendant—met Edward Scott Lackey—hereinafter referred to as Intervenor—at [a bar] in Catawba County during July 1997.

ADAMS v. TESSENER

[354 N.C. 57 (2001)]

6. The Defendant and the Intervenor—who were both intoxicated—had unprotected sexual intercourse the night they met.

7. Neither party knew the other's last name when they parted the following morning.

8. Defendant became pregnant as a result of the meeting.

. . . .

10. Defendant located Intervenor in September 1997 and informed him of her pregnancy and the likelihood that he had fathered the child.

11. Intervenor chose to do nothing about the pregnancy and impending birth.

12. Intervenor never voluntarily contacted Defendant after that meeting—before or after the birth of the child—to inquire about the health and progress of the mother or child or to inquire further about whether he had fathered the child.

. . . .

22. In June of 1998, Defendant located Intervenor and informed him he would be contacted by the Department of Social Services regarding a potential child support obligation.

23. Intervenor, once again, did not pursue any inquiry about the mother or child.

. . . .

47. Scott Lackey/Intervenor has worked for thirteen years at Holland Alignment and Service, a business belonging to his uncle. He also volunteers with the Mountain View Volunteer Fire Department.

48. Intervenor is married, but has been separated for two years. There is no formal separation agreement.

49. Intervenor owns his own residence.

50. Intervenor has a girlfriend, Sherry Letterman, who stays overnight with him approximately five nights a week. Ms. Letterman has two minor children who also stay overnight frequently with Mr. Lackey.

51. Intervenor has a brother, Bobby Lackey, who stays with him on occasion for several days at a time. Bobby Lackey has prior criminal convictions for taking indecent liberties with a minor child, simple assault, damage to property, assault on a female (two counts), DWI, appearing drunk and disruptive in a public place, assault on a law-enforcement officer, and delaying and obstructing an[] officer. Numerous other charges have been dismissed.

52. Intervenor has prior criminal convictions for driving an automobile with no insurance or registration, driving while his license was revoked, appearing drunk and disruptive in a public place, two counts of careless and reckless driving (which were plea negotiations after he had been charged with two counts of driving while impaired) and delaying and obstructing a law enforcement officer.

53. Intervenor repeatedly denies responsibility for his actions with respect to his criminal charges and convictions.

54. Intervenor admits he has violated the terms of the court orders in the above convictions.

55. Intervenor denies the serious nature of his brother's convictions.

56. Intervenor admits to drinking alcoholic beverages and frequenting bars. He states he does not have a substance abuse problem.

57. Intervenor, when visiting his son Aaron, has shown affection and appropriate behavior to his son.

58. Intervenor states he wants to take care of his son, and is capable of doing so.

59. Intervenor's schedule is irregular because of his full time job and the work as a volunteer fireman.

60. At the time of the hearing, Intervenor had only seen [his son] seven times since birth.

Lackey does not dispute that the evidence supports these findings and has not otherwise assigned error to any of the trial court's findings of fact. We must therefore determine whether the trial court's findings support its legal conclusion that Lackey's conduct has been inconsistent with his protected interest in the minor child.

ADAMS v. TESSENER

[354 N.C. 57 (2001)]

The trial court found that Tessener informed Lackey of her pregnancy and the likelihood that he had fathered the child in September 1997. Nonetheless, according to the trial court, Lackey elected to do "nothing" about the pregnancy and impending birth. The trial court determined that Lackey never voluntarily contacted Tessener after that meeting—before or after the birth of the child— to inquire about the health and progress of the child or to inquire further about whether he had fathered the child. The trial court also found that, in June 1998, Tessener located Lackey and informed him that DSS would contact him regarding a potential child support obligation. According to the trial court, Lackey again did not pursue any inquiry about the child.

The trial court's findings of fact are sufficient, when viewed cumulatively, to support its conclusion that Lackey's conduct was inconsistent with his protected interest in the child. Moreover, the evidence of record constitutes clear and convincing proof that Lackey's conduct was inconsistent with his right to custody of the child. Accordingly, the trial court did not err in applying the "best interest of the child" standard and in determining that Aaron's interests were best served by maintaining his primary physical custody with the Adams.

Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.