IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-280

No. COA20-508

Filed 16 November 2021

New Hanover County, No. 16 JA 60

IN THE MATTER OF: A.C.

Appeal by respondent-father from order entered 13 November 2019 by Judge
J. H. Corpening, II in New Hanover County District Court. Heard in the Court of
Appeals 9 March 2021.

> *Jennifer G. Cooke for petitioner-appellee New Hanover County Department of
> Social Services.*
>
> *Benjamin J. Kull for respondent-appellant father.*
>
> *Administrative Office of the Courts, by Guardian Ad Litem Appellate Counsel
> Matthew D. Wunsche, for guardian ad litem.*

GORE, Judge.

Respondent-father appeals from an Order concluding he acted inconsistently
with his constitutional rights as a parent and granting guardianship of the juvenile
to the juvenile's foster parents. Because the trial court erred by applying an improper
evidentiary standard and failed to make the statutorily required findings before
ceasing reunification efforts toward guardianship, we vacate and remand for a new
permanency planning hearing.

## I. Background

¶ 2   In its Order on Adjudication and Disposition filed 29 April 2016 ("April 2016 Order"), the trial court adjudicated the juvenile ("Andy")[1] dependent and neglected as defined by N.C. Gen. Stat. §§ 7B-101(9) and (15) based on "the stipulation of the Respondent-Parents, Guardian ad Litem ("GAL") and [New Hanover County Department of Social Services]." N.C. Gen. Stat. §§ 7B-101(9), (15) (2019). Subsequently, respondent-mother voluntarily relinquished her rights, and respondent-father's parental rights were involuntarily terminated in the trial court's Order Terminating Parental Rights filed 11 October 2017 ("October 2017 Order").

¶ 3   Respondent-father appealed the judicial termination of his parental rights. This Court vacated the October 2017 Order due to service deficiencies in an opinion filed on 5 June 2018. *In re A.J.C.*, 259 N.C. App. 804, 817 S.E.2d 475 (2018). Respondent-mother subsequently revoked her voluntary relinquishment of her parental rights. In the Subsequent Permanency Planning Hearing Order filed 15 October 2018 ("October 2018 Order"), the trial court found respondent-father was eagerly pursuing reunification with Andy and had participated in a residential substance abuse treatment program, despite not producing records or signing releases to show his case plan progress. Andy remained in foster care and had been

---

[1] Pseudonyms are used for all relevant persons throughout this opinion to protect the identity of the juvenile and for ease of reading.

diagnosed with many mental health conditions. In the October 2018 Order, the trial court changed the permanent plan from adoption to a permanent plan of "guardianship with a court approved caretaker with a concurrent plan of reunification."

¶ 4 In its Subsequent Permanency Planning Hearing Order filed 30 April 2019, the trial court found respondent-father continued to cooperate with DSS, receive substance abuse treatment and pass drug tests, maintain safe and appropriate housing, and to attain adequate finances. However, the trial court subsequently reviewed a GAL September 2019 report indicating that respondent-father's therapy had not resulted in him modifying his behavior regarding boundaries, consistent action regarding Andy, and displays of physical affection that made Andy uncomfortable. The trial court also considered the following corresponding testimony from a counselor, psychologist, DSS employee, and respondent-father at the 26 September 2019 permanency planning hearing: Andy had negative reactions after visits with respondent-father; respondent-father tested positive for a prescribed medication only once, suggesting he may not have been taking his prescription medications; instances where respondent-father did not adequately supervise Andy during visits; respondent-father was not aware of the medication Andy was taking despite attending doctor visits; respondent-father blamed the foster parents and DSS for Andy's mental health concerns; and respondent-father did not pay attention to the

doctor at a doctor's appointment for Andy.

During the 26 September 2019 permanency planning hearing, respondent-father did not raise the issue of his constitutionally protected status as a parent. Respondent-father also did not object to arguments that he had acted contrary to his constitutionally protected status as a parent, or the trial court's award of guardianship to the foster parents. In closing arguments, respondent-father's attorney asked the trial court "to deny the guardianship today[,] . . . [grant] extended visitation to start off at two times a week[,] . . . [and] start family therapy . . . addressing issues related to reunification."

In its final remarks and oral order at the 26 September 2019 permanency planning hearing, the trial court did not specifically mention respondent-father's constitutionally protected parental status, but specifically granted guardianship to the foster parents. The trial court's final remarks and oral order came immediately after the DSS attorney's closing, where she repeatedly argued respondent-father had acted inconsistently with his constitutionally protected right as a parent and guardianship was appropriate.

In its Juvenile Order filed 9 October 2019, the trial court granted guardianship to the foster parents. In its Subsequent Permanency Planning Hearing Order filed 13 November 2019 ("November 2019 Order"), the trial court determined respondent-mother and respondent-father had "acted inconsistently with their constitutional

rights to parent" and that "it is in [Andy's] best interest and welfare for guardianship to be granted to [the foster parents]." The trial court made the findings of fact in the November 2019 Order "by sufficient and competent evidence."

¶ 8        Respondent-father appeals the November 2019 Order and argues (1) the trial court applied the incorrect evidentiary standard in its conclusion he acted inconsistently with his constitutional right to parent Andy; (2) even if the trial court applied the correct evidentiary standard in reaching that conclusion, the findings do not support the conclusion; and (3) the findings do not support the trial court's "conclusion that reunification efforts clearly would be unsuccessful or inconsistent with [Andy's] health or safety."

¶ 9        The GAL and DSS argue respondent-father waived appellate review of the trial court's finding he acted inconsistently with his constitutionally protected status as a parent because he did not object on that basis, raise the issue before the trial court, or present any evidence regarding his constitutionally protected parental status. Further, the GAL admits "the [November 2019 Order] mistakenly states that the trial court applied a 'sufficient and competent' standard to the evidence in making its findings of fact rather than the required 'clear and convincing' standard," but DSS and the GAL portray the mistake as harmless.

## II.    Evidentiary Standard

Respondent-father first argues that the trial court failed to apply the proper evidentiary standard when concluding that respondent-father acted inconsistently with his constitutionally protected parental status. Respondent-father asserts the trial court erred by stating in its order that all findings of fact were based on "sufficient and competent evidence" as opposed to clear and convincing evidence.

"Findings in support of the conclusion that a parent acted inconsistently with the parent's constitutionally protected status are required to be supported by clear and convincing evidence." *In re K.L.*, 254 N.C. App. 269, 283, 802 S.E.2d 588, 597 (2017) (citing *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001)). Our Supreme Court has held that when a trial court fails to apply the clear and convincing evidence standard when making findings of fact in support of a conclusion that a parent has acted inconsistently with their constitutionally protected status, the case "must be remanded for findings of fact consistent with this standard of evidence." *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753-54 (2005).

DSS concedes that the written order lists the wrong standard of evidence. However, DSS argues the error was harmless and the trial court nonetheless applied the proper standard in making the findings. DSS cites no authority for this argument, nor points to any evidence the trial court applied the proper standard. Similarly, the GAL argues the error was harmless as a mere drafting error and because the order and the evidence satisfy the correct standard, we should not vacate the order. The

GAL relied on a footnote found in *In re Pope* to make this argument. 144 N.C. App. 32, 38, n.4, 547 S.E.2d 153, 157, n.4, *aff'd per curiam*, 354 N.C. 359, 554 S.E.2d 644 (2001). However, *In re Pope* involves the termination of parental rights, for which the legal standard is whether there is a probability of repetition of neglect. N.C. Gen. Stat. § 7B-1111(a)(1) (2019). The analysis in *In re Pope* is not controlling because it involves a different standard than the case *sub judice*.

¶ 13    Here, the trial court did not state the standard used in its oral ruling. The trial court's written order states, "the Court makes the following FINDINGS OF FACT by *sufficient and competent evidence*." Based on the record, we cannot conclude the trial court applied the proper clear and convincing evidence standard and thus remand for findings of fact consistent with the proper standard of evidence.

### III.    Constitutionally Protected Parental Status

¶ 14    Respondent-father argues the trial court erred because the findings do not support the conclusion that he acted inconsistently with his constitutionally protected parental status. Respondent-father asserts that several of the trial court's findings instead acknowledge his progress, participation, involvement, and availability in Andy's life. Respondent-father also contends that in other findings the trial court misconstrued the evidence and the evidence does not support the findings of fact.

¶ 15    "[A] natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent,

or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status." *David N.*, 359 N.C. at 307, 608 S.E.2d at 753 (2005). "[T]he decision to remove a child from the custody of a natural parent must not be lightly undertaken. Accordingly, a trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." *Adams*, 354 N.C. at 63, 550 S.E.2d at 503 (2001) (citation omitted).

¶ 16 "This Court reviews the conclusion of whether a parent has acted inconsistently with her constitutionally protected rights de novo and to determine whether it is supported by clear and convincing evidence." *In re B.R.W. & B.G.W.*, 2021-NCCOA-343, ¶ 34 (cleaned up).

¶ 17 This Court has issued conflicting rulings on the issue of appellate review of conclusions that a parent has acted inconsistently with their constitutionally protected status. Often panels sitting mere weeks apart have issued opinions taking diverging lines of analysis on this issue. *See In re B.R.W. & B.G.W*, 2021-NCCOA-343, ¶¶ 36-41; *In re N.Z.B.*, 2021-NCCOA-345, ¶¶ 16-22; *In re M.F.*, 2021-NCCOA-368, ¶¶ 22-23. This Court would benefit from the guidance of our Supreme Court concerning when and how the constitutional issue of whether parents have acted inconsistently with their constitutionally protected rights must be raised and preserved in the trial court. However, until our Supreme Court provides much needed

clarity, we must proceed and evaluate the cases before us despite conflicting and divergent precedent.

¶ 18     In the case *sub judice*, we decline to address the conflicting analyses in this Court's precedent, because the disposition in the present case is unaffected by the line of analysis utilized.

## IV.     Reunification Efforts

¶ 19     Respondent-father argues the trial court erred in ceasing reunification efforts because the findings do not support the conclusion that reunification efforts clearly would be unsuccessful or inconsistent with Andy's health or safety.

¶ 20     At a permanency planning hearing a trial court must adopt reunification as either a primary or secondary permanent plan unless the requirements of N.C. Gen. Stat. § 7B-906.2(b) are met. Respondent-father argues we should apply the version of § 7B-906.2(b) before the statute's 2019 amendment, because the amendment went into effect on 1 October 2019 and the permanency planning hearing in the case *sub judice* was held on 26 and 30 September 2019, before the amendment went into effect.

¶ 21     Under the version of the statute in effect as of the hearing dates, reunification efforts did not automatically cease upon the achievement of the permanent plan. Respondent-father requested the trial court order family therapy and a trial home placement as part of continuing renunciation efforts.

¶ 22     The GAL and DSS argue the amended version of the statute applies.  We agree.

¶ 23    "Pending" is defined as "[r]emaining undecided [or] awaiting decision." *In re E.M.*, 249 N.C. App. 44, 51, 790 S.E.2d 863, 870 (2016) (citing *Pending*, Black's Law Dictionary (9th ed. 2009)). *In re E.M.*, involved the same determination of the applicability of requirements from an amendment to § 7B-906.2(b) as the present case. In *In re E.M.*, this Court concluded the case was no longer pending because the trial court announced its decision to cease reunification efforts at the conclusion of the permanency planning hearing. *Id.* In contrast, while the trial court in the case *sub judice* did announce its award of guardianship at the conclusion of the permanency planning hearing, it did not announce a decision as to reunification efforts. Thus, we conclude the matter remained pending until the order was entered on 13 November 2019, and the 2019 amendment to § 7B-906.2(b) is applicable.

¶ 24    Section 7B-906.2(b), following the 2019 amendment provides:

> At the permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan. Reunification shall be a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), the permanent plan is or has been achieved in accordance with subsection (a1) of this section, or the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety. The finding that reunification efforts clearly would be unsuccessful or inconsistent with the juvenile's health or safety may be made at any permanency planning hearing. *Unless permanence has been achieved,* the court shall order the county department of social services to make efforts toward finalizing the primary and secondary permanent

> plans and may specify efforts that are reasonable to timely
> achieve permanence for the juvenile.

N.C. Gen. Stat. § 7B-906.2(b) (2019) (emphasis added). Following the 2019 amendment, findings that reunification clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety are required to cease reunification (*i.e.*, remove reunification as a primary or secondary plan), but are not required if the permanent plan has already been achieved.

¶ 25 The parties' arguments over which version of the statute is applicable is irrelevant. Neither permanent plan could have been achieved until the entry of the court's orders of 9 October 2021 and 13 November 2021.

¶ 26 At every permanency planning hearing, the court shall identify the primary and secondary plan and unless permanence has been achieved, the court shall order DSS to make efforts towards finalizing both the primary and secondary plans, which here includes reunification. Until entry of the court's permanency planning order, DSS was under the obligation to continue reunification efforts as reunification was one of the two required plans.

¶ 27 Here, Andy's permanent plan of guardianship with his foster parents was not achieved until after the permanency planning hearing subject to this appeal. The court orally announced its intention to award guardianship at the conclusion of the 30 September 2019 hearing. It entered its order awarding legal guardianship to the

foster parents on 9 October 2019. DSS' strategic submission of one order ahead of another order does not remove the court's statutory obligation to take evidence and make written findings of fact by clear and convincing evidence of the four statutory factors required before ceasing reunification efforts with respondent-father. N.C. Gen. Stat. § 7B-906.2(b).

¶ 28 We vacate and remand for a new permanency planning hearing to apply all appropriate evidentiary standards. Upon remand if the trial court wishes to remove reunification as a permanent plan, the trial court is bound by statute to make all four findings consistent with N.C. Gen. Stat. § 7B-906.2(d). *See In re A.W.*, 2021-NCCOA-182, ¶ 42 (holding to cease reunification the trial court must make the statutorily required findings of fact related to whether parent demonstrated degree of failure necessary to support ceasing reunification efforts).

V. Conclusion

¶ 29 The trial court failed to apply the proper evidentiary standard in making findings of fact to support its conclusion that respondent-father acted inconsistently with his constitutionally protected status as a parent. The court failed to make findings of fact to support its order which ceased reunification efforts and awarded guardianship to foster parents. Thus, we must vacate the 12 November 2019 order and remand for a new permanency planning hearing consistent with this opinion.

VACATED AND REMANDED.

Judges TYSON and MURPHY concur.