IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-280

 No. COA20-508

 Filed 16 November 2021

 New Hanover County, No. 16 JA 60

 IN THE MATTER OF: A.C.

 Appeal by respondent-father from order entered 13 November 2019 by Judge

 J. H. Corpening, II in New Hanover County District Court. Heard in the Court of

 Appeals 9 March 2021.

 Jennifer G. Cooke for petitioner-appellee New Hanover County Department of
 Social Services.

 Benjamin J. Kull for respondent-appellant father.

 Administrative Office of the Courts, by Guardian Ad Litem Appellate Counsel
 Matthew D. Wunsche, for guardian ad litem.

 GORE, Judge.

¶1 Respondent-father appeals from an Order concluding he acted inconsistently

 with his constitutional rights as a parent and granting guardianship of the juvenile

 to the juvenile’s foster parents. Because the trial court erred by applying an improper

 evidentiary standard and failed to make the statutorily required findings before

 ceasing reunification efforts toward guardianship, we vacate and remand for a new

 permanency planning hearing.
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 I. Background

¶2 In its Order on Adjudication and Disposition filed 29 April 2016 (“April 2016

 Order”), the trial court adjudicated the juvenile (“Andy”)1 dependent and neglected

 as defined by N.C. Gen. Stat. §§ 7B-101(9) and (15) based on “the stipulation of the

 Respondent-Parents, Guardian ad Litem (“GAL”) and [New Hanover County

 Department of Social Services].” N.C. Gen. Stat. §§ 7B-101(9), (15) (2019).

 Subsequently, respondent-mother voluntarily relinquished her rights, and

 respondent-father’s parental rights were involuntarily terminated in the trial court’s

 Order Terminating Parental Rights filed 11 October 2017 (“October 2017 Order”).

¶3 Respondent-father appealed the judicial termination of his parental rights.

 This Court vacated the October 2017 Order due to service deficiencies in an opinion

 filed on 5 June 2018. In re A.J.C., 259 N.C. App. 804, 817 S.E.2d 475 (2018).

 Respondent-mother subsequently revoked her voluntary relinquishment of her

 parental rights. In the Subsequent Permanency Planning Hearing Order filed 15

 October 2018 (“October 2018 Order”), the trial court found respondent-father was

 eagerly pursuing reunification with Andy and had participated in a residential

 substance abuse treatment program, despite not producing records or signing

 releases to show his case plan progress. Andy remained in foster care and had been

 1 Pseudonyms are used for all relevant persons throughout this opinion to protect the identity

 of the juvenile and for ease of reading.
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 diagnosed with many mental health conditions. In the October 2018 Order, the trial

 court changed the permanent plan from adoption to a permanent plan of

 “guardianship with a court approved caretaker with a concurrent plan of

 reunification.”

¶4 In its Subsequent Permanency Planning Hearing Order filed 30 April 2019,

 the trial court found respondent-father continued to cooperate with DSS, receive

 substance abuse treatment and pass drug tests, maintain safe and appropriate

 housing, and to attain adequate finances. However, the trial court subsequently

 reviewed a GAL September 2019 report indicating that respondent-father’s therapy

 had not resulted in him modifying his behavior regarding boundaries, consistent

 action regarding Andy, and displays of physical affection that made Andy

 uncomfortable. The trial court also considered the following corresponding testimony

 from a counselor, psychologist, DSS employee, and respondent-father at the 26

 September 2019 permanency planning hearing: Andy had negative reactions after

 visits with respondent-father; respondent-father tested positive for a prescribed

 medication only once, suggesting he may not have been taking his prescription

 medications; instances where respondent-father did not adequately supervise Andy

 during visits; respondent-father was not aware of the medication Andy was taking

 despite attending doctor visits; respondent-father blamed the foster parents and DSS

 for Andy’s mental health concerns; and respondent-father did not pay attention to the
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 doctor at a doctor’s appointment for Andy.

¶5 During the 26 September 2019 permanency planning hearing, respondent-

 father did not raise the issue of his constitutionally protected status as a parent.

 Respondent-father also did not object to arguments that he had acted contrary to his

 constitutionally protected status as a parent, or the trial court’s award of

 guardianship to the foster parents. In closing arguments, respondent-father’s

 attorney asked the trial court “to deny the guardianship today[,] . . . [grant] extended

 visitation to start off at two times a week[,] . . . [and] start family therapy . . .

 addressing issues related to reunification.”

¶6 In its final remarks and oral order at the 26 September 2019 permanency

 planning hearing, the trial court did not specifically mention respondent-father’s

 constitutionally protected parental status, but specifically granted guardianship to

 the foster parents. The trial court’s final remarks and oral order came immediately

 after the DSS attorney’s closing, where she repeatedly argued respondent-father had

 acted inconsistently with his constitutionally protected right as a parent and

 guardianship was appropriate.

¶7 In its Juvenile Order filed 9 October 2019, the trial court granted guardianship

 to the foster parents. In its Subsequent Permanency Planning Hearing Order filed 13

 November 2019 (“November 2019 Order”), the trial court determined respondent-

 mother and respondent-father had “acted inconsistently with their constitutional
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 rights to parent” and that “it is in [Andy’s] best interest and welfare for guardianship

 to be granted to [the foster parents].” The trial court made the findings of fact in the

 November 2019 Order “by sufficient and competent evidence.”

¶8 Respondent-father appeals the November 2019 Order and argues (1) the trial

 court applied the incorrect evidentiary standard in its conclusion he acted

 inconsistently with his constitutional right to parent Andy; (2) even if the trial court

 applied the correct evidentiary standard in reaching that conclusion, the findings do

 not support the conclusion; and (3) the findings do not support the trial court’s

 “conclusion that reunification efforts clearly would be unsuccessful or inconsistent

 with [Andy’s] health or safety.”

¶9 The GAL and DSS argue respondent-father waived appellate review of the trial

 court’s finding he acted inconsistently with his constitutionally protected status as a

 parent because he did not object on that basis, raise the issue before the trial court,

 or present any evidence regarding his constitutionally protected parental status.

 Further, the GAL admits “the [November 2019 Order] mistakenly states that the trial

 court applied a ‘sufficient and competent’ standard to the evidence in making its

 findings of fact rather than the required ‘clear and convincing’ standard,” but DSS

 and the GAL portray the mistake as harmless.

 II. Evidentiary Standard
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

¶ 10 Respondent-father first argues that the trial court failed to apply the proper

 evidentiary standard when concluding that respondent-father acted inconsistently

 with his constitutionally protected parental status. Respondent-father asserts the

 trial court erred by stating in its order that all findings of fact were based on

 “sufficient and competent evidence” as opposed to clear and convincing evidence.

¶ 11 “Findings in support of the conclusion that a parent acted inconsistently with

 the parent’s constitutionally protected status are required to be supported by clear

 and convincing evidence.” In re K.L., 254 N.C. App. 269, 283, 802 S.E.2d 588, 597

 (2017) (citing Adams v. Tessener, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001)). Our

 Supreme Court has held that when a trial court fails to apply the clear and convincing

 evidence standard when making findings of fact in support of a conclusion that a

 parent has acted inconsistently with their constitutionally protected status, the case

 “must be remanded for findings of fact consistent with this standard of evidence.”

 David N. v. Jason N., 359 N.C. 303, 307, 608 S.E.2d 751, 753-54 (2005).

¶ 12 DSS concedes that the written order lists the wrong standard of evidence.

 However, DSS argues the error was harmless and the trial court nonetheless applied

 the proper standard in making the findings. DSS cites no authority for this argument,

 nor points to any evidence the trial court applied the proper standard. Similarly, the

 GAL argues the error was harmless as a mere drafting error and because the order

 and the evidence satisfy the correct standard, we should not vacate the order. The
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 GAL relied on a footnote found in In re Pope to make this argument. 144 N.C. App.

 32, 38, n.4, 547 S.E.2d 153, 157, n.4, aff’d per curiam, 354 N.C. 359, 554 S.E.2d 644

 (2001). However, In re Pope involves the termination of parental rights, for which the

 legal standard is whether there is a probability of repetition of neglect. N.C. Gen.

 Stat. § 7B-1111(a)(1) (2019). The analysis in In re Pope is not controlling because it

 involves a different standard than the case sub judice.

¶ 13 Here, the trial court did not state the standard used in its oral ruling. The trial

 court’s written order states, “the Court makes the following FINDINGS OF FACT by

 sufficient and competent evidence.” Based on the record, we cannot conclude the trial

 court applied the proper clear and convincing evidence standard and thus remand for

 findings of fact consistent with the proper standard of evidence.

 III. Constitutionally Protected Parental Status

¶ 14 Respondent-father argues the trial court erred because the findings do not

 support the conclusion that he acted inconsistently with his constitutionally protected

 parental status. Respondent-father asserts that several of the trial court’s findings

 instead acknowledge his progress, participation, involvement, and availability in

 Andy’s life. Respondent-father also contends that in other findings the trial court

 misconstrued the evidence and the evidence does not support the findings of fact.

¶ 15 “[A] natural parent may lose his constitutionally protected right to the control

 of his children in one of two ways: (1) by a finding of unfitness of the natural parent,
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 or (2) where the natural parent’s conduct is inconsistent with his or her

 constitutionally protected status.” David N., 359 N.C. at 307, 608 S.E.2d at 753

 (2005). “[T]he decision to remove a child from the custody of a natural parent must

 not be lightly undertaken. Accordingly, a trial court’s determination that a parent’s

 conduct is inconsistent with his or her constitutionally protected status must be

 supported by clear and convincing evidence.” Adams, 354 N.C. at 63, 550 S.E.2d at

 503 (2001) (citation omitted).

¶ 16 “This Court reviews the conclusion of whether a parent has acted

 inconsistently with her constitutionally protected rights de novo and to determine

 whether it is supported by clear and convincing evidence.” In re B.R.W. & B.G.W.,

 2021-NCCOA-343, ¶ 34 (cleaned up).

¶ 17 This Court has issued conflicting rulings on the issue of appellate review of

 conclusions that a parent has acted inconsistently with their constitutionally

 protected status. Often panels sitting mere weeks apart have issued opinions taking

 diverging lines of analysis on this issue. See In re B.R.W. & B.G.W, 2021-NCCOA-

 343, ¶¶ 36-41; In re N.Z.B., 2021-NCCOA-345, ¶¶ 16-22; In re M.F., 2021-NCCOA-

 368, ¶¶ 22-23. This Court would benefit from the guidance of our Supreme Court

 concerning when and how the constitutional issue of whether parents have acted

 inconsistently with their constitutionally protected rights must be raised and

 preserved in the trial court. However, until our Supreme Court provides much needed
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 clarity, we must proceed and evaluate the cases before us despite conflicting and

 divergent precedent.

¶ 18 In the case sub judice, we decline to address the conflicting analyses in this

 Court’s precedent, because the disposition in the present case is unaffected by the

 line of analysis utilized.

 IV. Reunification Efforts

¶ 19 Respondent-father argues the trial court erred in ceasing reunification efforts

 because the findings do not support the conclusion that reunification efforts clearly

 would be unsuccessful or inconsistent with Andy’s health or safety.

¶ 20 At a permanency planning hearing a trial court must adopt reunification as

 either a primary or secondary permanent plan unless the requirements of N.C. Gen.

 Stat. § 7B-906.2(b) are met. Respondent-father argues we should apply the version of

 § 7B-906.2(b) before the statute’s 2019 amendment, because the amendment went

 into effect on 1 October 2019 and the permanency planning hearing in the case sub

 judice was held on 26 and 30 September 2019, before the amendment went into effect.

¶ 21 Under the version of the statute in effect as of the hearing dates, reunification

 efforts did not automatically cease upon the achievement of the permanent plan.

 Respondent-father requested the trial court order family therapy and a trial home

 placement as part of continuing renunciation efforts.

¶ 22 The GAL and DSS argue the amended version of the statute applies. We agree.
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

¶ 23 “Pending” is defined as “[r]emaining undecided [or] awaiting decision.” In re

 E.M., 249 N.C. App. 44, 51, 790 S.E.2d 863, 870 (2016) (citing Pending, Black’s Law

 Dictionary (9th ed. 2009)). In re E.M., involved the same determination of the

 applicability of requirements from an amendment to § 7B-906.2(b) as the present

 case. In In re E.M., this Court concluded the case was no longer pending because the

 trial court announced its decision to cease reunification efforts at the conclusion of

 the permanency planning hearing. Id. In contrast, while the trial court in the case

 sub judice did announce its award of guardianship at the conclusion of the

 permanency planning hearing, it did not announce a decision as to reunification

 efforts. Thus, we conclude the matter remained pending until the order was entered

 on 13 November 2019, and the 2019 amendment to § 7B-906.2(b) is applicable.

¶ 24 Section 7B-906.2(b), following the 2019 amendment provides:

 At the permanency planning hearing, the court shall adopt
 concurrent permanent plans and shall identify the primary
 plan and secondary plan. Reunification shall be a primary
 or secondary plan unless the court made findings under
 G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), the permanent plan
 is or has been achieved in accordance with subsection (a1)
 of this section, or the court makes written findings that
 reunification efforts clearly would be unsuccessful or would
 be inconsistent with the juvenile’s health or safety. The
 finding that reunification efforts clearly would be
 unsuccessful or inconsistent with the juvenile’s health or
 safety may be made at any permanency planning hearing.
 Unless permanence has been achieved, the court shall order
 the county department of social services to make efforts
 toward finalizing the primary and secondary permanent
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 plans and may specify efforts that are reasonable to timely
 achieve permanence for the juvenile.

 N.C. Gen. Stat. § 7B-906.2(b) (2019) (emphasis added). Following the 2019

 amendment, findings that reunification clearly would be unsuccessful or would be

 inconsistent with the juvenile’s health or safety are required to cease reunification

 (i.e., remove reunification as a primary or secondary plan), but are not required if the

 permanent plan has already been achieved.

¶ 25 The parties’ arguments over which version of the statute is applicable is

 irrelevant. Neither permanent plan could have been achieved until the entry of the

 court’s orders of 9 October 2021 and 13 November 2021.

¶ 26 At every permanency planning hearing, the court shall identify the primary

 and secondary plan and unless permanence has been achieved, the court shall order

 DSS to make efforts towards finalizing both the primary and secondary plans, which

 here includes reunification. Until entry of the court’s permanency planning order,

 DSS was under the obligation to continue reunification efforts as reunification was

 one of the two required plans.

¶ 27 Here, Andy’s permanent plan of guardianship with his foster parents was not

 achieved until after the permanency planning hearing subject to this appeal. The

 court orally announced its intention to award guardianship at the conclusion of the

 30 September 2019 hearing. It entered its order awarding legal guardianship to the
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

 foster parents on 9 October 2019. DSS’ strategic submission of one order ahead of

 another order does not remove the court’s statutory obligation to take evidence and

 make written findings of fact by clear and convincing evidence of the four statutory

 factors required before ceasing reunification efforts with respondent-father. N.C.

 Gen. Stat. § 7B-906.2(b).

¶ 28 We vacate and remand for a new permanency planning hearing to apply all

 appropriate evidentiary standards. Upon remand if the trial court wishes to remove

 reunification as a permanent plan, the trial court is bound by statute to make all four

 findings consistent with N.C. Gen. Stat. § 7B-906.2(d). See In re A.W., 2021-NCCOA-

 182, ¶ 42 (holding to cease reunification the trial court must make the statutorily

 required findings of fact related to whether parent demonstrated degree of failure

 necessary to support ceasing reunification efforts).

 V. Conclusion

¶ 29 The trial court failed to apply the proper evidentiary standard in making

 findings of fact to support its conclusion that respondent-father acted inconsistently

 with his constitutionally protected status as a parent. The court failed to make

 findings of fact to support its order which ceased reunification efforts and awarded

 guardianship to foster parents. Thus, we must vacate the 12 November 2019 order

 and remand for a new permanency planning hearing consistent with this opinion.

 VACATED AND REMANDED.
 IN RE A.C.

 2021-NCCOA-280

 Opinion of the Court

Judges TYSON and MURPHY concur.