An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-669

Filed 20 May 2026

Wilkes County, No. 22JA000031-960

IN THE MATTER OF:
L.N.B.


Appeal by Respondent Mother and Respondent Father from orders entered 25 September 2024 by Judge Laura B. Luffman, and 14 February 2024 and 27 January 2025 by Judge William F. Brooks in Wilkes County District Court. Heard in the Court of Appeals 12 March 2026.


> *Round 2 Legal, by Ashley A. Crowder, for Respondents–Appellants Mother and Father.*
>
> *The Law Office of Erika Leigh Hamby, PLLC, by Erika Leigh Hamby, for Petitioner–Appellee Wilkes County Department of Social Services.*
>
> *Administrative Office of the Courts, by N.C. Guardian ad Litem Staff Attorney Brittany T. McKinney, for Appellee Guardian ad litem.*


MURRY, Judge.


Respondents appeal from the trial court's 14 February 2024 and 24 September 2024 permanency-planning orders eliminating reunification as a permanent plan for

their minor child, L.N.B. (Lauren).[1] They also appeal from the trial court's 27 January 2025 permanency-planning order and the denial of their Rule 60 motion to re-open the evidence. *See* N.C. R. Civ. P. 60(b)(6). For the reasons below, this Court (1) denies Respondents' petition for writ of certiorari (PWC), (2) grants in part and denies in part Petitioner's motion to dismiss Respondents' appeal, (3) affirms the trial court's 27 January 2025 order, and (4) affirms the trial court's denial of Respondents' Rule 60 motion.

## I.    Background

Mother gave birth to Lauren in October 2021 while she and Father were married and living together. In January 2022, the Wilkes County Department of Social Services (DSS) received a hospital report indicating that Lauren had "a large bruise . . . [or] hematoma under her tongue, and there was no reported cause of the injury." Upon further investigation, DSS found that Respondents had been Lauren's sole caretakers at the time of the injury and ensured that the child's grandmother would stay with Respondents to supervise Lauren's care following discharge from the hospital. At a follow-up appointment two weeks later, Lauren's skeletal survey scans revealed two rib fractures that Respondents could not explain. Due to these injuries, DSS placed Lauren in her grandparents' custody and required them to supervise

---

[1]    In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor child by a pseudonym to protect her identity. *See* N.C. R. App. P. 42(b).

Respondents' care of Lauren at all times. Three weeks later, DSS received another report of "serious physical injury" to Lauren, this time "a broken arm with no explanation as to how the injury occurred." Unable to ensure Lauren's safety in her grandparents' custody, DSS filed a petition on 18 February 2022 alleging that Lauren was an abused and neglected juvenile under N.C.G.S. § 7B-101. That same day, the trial court entered an order granting DSS nonsecure custody of Lauren. The trial court set a follow-up hearing date for 21 February 2022, after which it granted DSS continued custody of Lauren.

The trial court conducted adjudication and disposition hearings on 7 October and 9 December 2022, at which it heard testimony from Mother, medical providers who had examined Lauren, and the DSS social worker assigned to the case. Mother testified to Father's caring for Lauren around the time Mother discovered the hematoma on Lauren's tongue and lack of movement in Lauren's broken arm. Mother claimed not to have noticed the deformity on Lauren's tongue or any redness or bruising on Lauren's arm until a doctor informed her of the hematoma at Lauren's primary care appointment. Following the hearing, the trial court adjudicated Lauren an abused and neglected juvenile and maintained DSS custody of her. The trial court found that Mother "refus[ed] to acknowledge that the minor child needs protection from . . . Father" despite Mother's knowledge that "if . . . she did not injure the . . . child, then she must know that . . . Father caused the injuries." The trial court also found that returning Lauren to Respondents' care would be contrary to her best

interests. The trial court maintained Lauren in DSS custody, instructed Respondents to comply with a DSS family-services case plan that included parenting classes and mental-health treatment, and ordered a primary plan of reunification.

Respondents still could not provide a medically acceptable explanation for Lauren's injuries at a 13 March 2023 permanency-planning hearing. At a 23 October 2023 permanency-planning hearing, the DSS social worker testified to Lauren's placement in the custody of her maternal aunt and uncle since April 2022 and to her thriving in their care. She described Lauren as happy, bonded with the family, developmentally on track or advanced, and no longer requiring medical feeding supports following a successful swallow study. After the hearing, the trial court maintained a primary plan of reunification with a secondary plan of custody with an approved caregiver.

On 23 May 2024, Father filed a Rule 59 motion for a new trial, alleging newly discovered evidence consisting of a "medical opinion report" that was allegedly "necessary for determining the truth about [Lauren's] injuries and the proper disposition of this case." The motion urged the trial court to grant reunification based on this "new evidence." Father also filed a Rule 60 motion requesting relief from the trial court's judgment and consideration of the medical opinion report.[2]

---

[2] Although Respondents claim on appeal that the trial court denied both motions, they fail to include copies of the trial court's orders denying these motions in the record on appeal. Thus, we cannot review their appeal of the purported denials. *See* N.C. R. App. P. 9(a)(h).

At an 18 November 2024 permanency-planning hearing, the DSS social worker testified that Lauren had resided with her maternal aunt and uncle for over two years and that she was enrolled in preschool, developmentally on track or advanced, and medically stable. She further testified that Respondents continued to deny responsibility for Lauren's injuries and maintain that they resulted from an unsubstantiated genetic condition, despite acknowledging that they were Lauren's sole caregivers at the time of her injuries. Lauren's guardian *ad litem* (GAL) presented a court report recommending guardianship with Lauren's maternal aunt and uncle as a permanent plan.

Following the hearing, the trial court entered a permanency-planning order on 27 January 2025. The trial court found that Respondents continued to assert that Lauren's injuries resulted from a genetic condition and that Mother maintained her ignorance of the cause of the injuries. Concluding that Respondents had acted inconsistently with their constitutionally protected parental rights, the trial court eliminated reunification as a permanent plan and granted guardianship of Lauren to her maternal aunt and uncle. On 28 February 2025, Respondents filed notice of appeal from the 9 December 2022 adjudication order,[3] the 27 January 2025 permanency-planning order, "all other permanency[-]planning orders entered . . .

---

[3] Because Respondents do not contest the 9 December 2022 order in their brief on appeal, we do not address it in our review. *See* N.C. R. App. P. 28(b)(6).

between 9 December 2022 and 27 January 2025," and the denial of their post-trial motions.

## II.    Jurisdiction

Respondents appeal from the trial court's 14 February 2024, 24 September 2024, and 27 January 2025 permanency-planning orders eliminating reunification as Lauren's permanent plan, as well as from the denial of their Rule 60 motion to re-open the evidence. *See* N.C. R. Civ. P. 60(b)(6). At the outset, we must determine whether to grant Respondents' PWC to consider their otherwise untimely appeal from the challenged 2024 orders. *See* N.C. R. App. P. 21(a); N.C.G.S. § 7B-1001. Our Supreme Court has "establishe[d] a two-factor test to assess whether certiorari review by an appellate court is appropriate." *Cryan v. Nat'l Council of YMCAs of the U.S.*, 384 N.C. 569, 572 (2023). A party seeking certiorari review must show (1) either "merit or that error was probably committed below" and (2) that "extraordinary circumstances" "justify" appellate review. *Id.* (quotations omitted). Extraordinary circumstances "require a showing of substantial harm, considerable waste of judicial resources, or wide-reaching issues of justice and liberty at stake." *Id.* at 572–73. (Citation modified.) Respondents fail to demonstrate merit or probable error. Upon careful consideration, we deny Respondents' PWC , and thus consider only their arguments for which they have timely filed notice of appeal.

Aside from the portions of Respondents' appeal that we dismiss as untimely filed, this Court has jurisdiction to consider Respondents' appeal from the three

challenged permanency-planning orders because they "eliminat[e] reunification . . . as a permanent plan" for Lauren, N.C.G.S. § 7B-1001(a)(5), and has jurisdiction to review the trial court's denial of Respondents' Rule 60 motion because it is the "final judgment of a district court in a civil action." *Id.* § 7A-27(b)(2).

## III.  Analysis

Respondents argue that the trial court erred by eliminating reunification as a permanent plan in the 14 February 2024, 25 September 2024, and 27 January 2025 permanency-planning orders and by denying their Rule 60 motion to "re-open the evidence regarding adjudication." *See* N.C. R. Civ. P. 60(b)(6). They also contest the Petitioners' motion to dismiss their appeal as untimely. For the reasons below, we (1) deny Respondents' PWC, (2) grants in part and denies in part Petitioner's motion to dismiss Respondents' appeal, (3) affirms the trial court's 27 January 2025 order, and (4) affirms the trial court's denial of Respondents' Rule 60 motion.

## A. Motion to Dismiss

Petitioners move to dismiss Respondents' appeal from the trial court's 14 February 2024, 24 September 2024, and 27 January 2025 permanency-planning orders for Respondents' failure to file timely notice of appeal.[4] In a juvenile matter, a

---

[4]  Petitioners also move to dismiss Respondents' appeal from the trial court's 9 December 2022 order and from "all other permanency[-]planning orders entered in this matter between 9 December 2022 and 27 January 2025." Because Respondents specifically argue on appeal solely from the 14

party must file notice of appeal from a trial court's order "that changes legal custody of a juvenile . . . within 30 days after entry and service of the order." N.C.G.S. § 7B-1001(b) (2025). The "parent who is a party" may only do so if the "order . . . eliminat[es] reunification . . . as a permanent plan" and he or she (1) "[h]as preserved the right to appeal the order in writing within 30 days after [its] entry and service," (2) a termination "petition or motion has not been filed within 65 days of entry and service" of the order, and (3) a "notice of appeal of the order . . . is filed within 30 days after" those 65 days have elapsed. *Id.* § 7B-1001(a)(5)(a)(1)–(3).

Here, Respondents filed notice of appeal on 28 February 2025 from the 9 December 2022 adjudication order, the 27 January 2025 permanency-planning order, the denial of their Rule 60 motion, and "[a]ll other permanency[-]planning orders entered in this matter between 9 December 2022 and 27 January 2025." The DSS attorney served Respondents with the 24 September 2024 order on 1 October 2024. Respondents did not file notice of appeal within thirty days of entry and service of that order. Because Respondents failed to timely file their notice of appeal within thirty days of entry and service of the 24 September 2024 and 14 February 2024 orders, we grant Petitioners' motion to dismiss Respondents' appeal from these

---

February 2024, 24 September 2024, and 27 January 2025 orders, we limit our review to these orders. *See* NC. R. App. P. 28(b)(6).

orders.[5]

## B. Sufficiency of Findings

But Respondents did timely file notice of appeal within thirty days of the 27 January 2025 permanency-planning order under N.C.G.S. § 7B-1001. They argue that the trial court failed to make sufficient findings in the 27 January 2025 order under N.C.G.S. § 7B-101 and N.C.G.S. § 7B-906 and that competent evidence did not support its findings. We disagree and thus affirm the trial court's 27 January 2025 order.

We review orders that cease reunification efforts to determine "whether . . . competent evidence . . . support[s] the [trial court's] findings and whether the findings support the conclusions of law." *In re A.P.W.*, 378 N.C. 405, 410 (2021). The trial court's findings of fact are "conclusive on appeal if . . . evidence . . . support[s] them, even though the evidence might sustain findings to the contrary." *Adams v. Tessener*, 354 N.C. 57, 63 (2001) (quotation omitted). Unchallenged findings of fact bind us on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97 (1991). We review the trial court's "dispositional choice[ ] . . . to eliminate reunification from the permanent plan . . . for abuse of discretion." *A.P.W.*, 378 N.C. at 410 (quotation omitted).

At each permanency-planning hearing, a trial court must find "whether . . .

---

[5] Respondents also fail to include a copy of the 14 February 2024 order in the record on appeal, merely attaching the order in an appendix to their brief. We base our review "solely upon the record on appeal," which must "contain . . . a copy of the . . . order . . . from which appeal is taken." N.C. R. App. P. 9(a)(h). Thus, even if Respondents had timely noticed appeal from this order, their failure to include it in the record deems it unpreserved for review.

[DSS] reunification efforts . . . were reasonable" and must "make written findings about [DSS] efforts . . . toward the primary permanent plan and any secondary permanent plans" "[u]nless reunification efforts were previously ceased." N.C.G.S. § 7B-906.2(c). The trial court must "consider information from the parents, the juvenile, . . . the guardian *ad litem*, and any other person or agency that will aid in the court's review." *Id.* § 7B-906.1(c) (italics added). Respondents claim that the trial court "prevented" them from "presenting certain information" at the hearing in violation of N.C.G.S. § 7B-906.1(c) and failed to consider "any testimony in support of reunification." Instead, Respondents argue that "there is no indication that the [trial] court gave any consideration at all to anything other than the reports and recommendations of Wilkes County DSS and the Guardian *ad Litem*."

But the record indicates that the trial court considered Mother's testimony in making its findings. In the 27 January 2025 order, the trial court states that it "heard the evidence" from the permanency-planning hearing, "including the testimony" of Mother and Mother's aunt. Mother testified to making progress on her DSS case plan and to participating regularly in visitation with Lauren. She also testified to "hav[ing] no idea" how Lauren received the injuries that had caused her removal from Respondents' care, to disbelieving that Father caused the injuries, and to desiring to live with Father if Lauren were to return to their custody. The trial court found that Mother "continues to indicate she has 'no idea' how the child was injured[,] and . . . she does not believe that . . . Father caused the injuries." This unchallenged finding

reflects the trial court's consideration of Mother's testimony in reaching the decision to cease reunification efforts. Because the trial court carefully and thoughtfully considered the evidence in making its findings, we hold that it did not abuse its discretion in reaching them.

Respondents further assert that DSS failed to make "reasonable efforts" towards reunification and instigated "a systematic move towards setting conditions for the minor child to never return home to her parents" despite Respondents' "substantial if not full compliance" with their case plans. Respondents thus challenge the trial court's finding that DSS "made reasonable efforts to reunite[ ] the minor child with her mother" as unsupported by the evidence. Our Supreme Court has emphasized that a DSS "case plan is not just a checklist" and that reunification requires parents to "demonstrate acknowledgement and understanding of why the juvenile entered DSS custody[,] as well as changed behaviors." *In re R.L.R.*, 381 N.C. 863, 875 (2022) (quotation omitted). Here, Respondents continually refused to provide any medically reasonable explanation for Lauren's injuries or to acknowledge the harmful conditions that caused her removal from their care. This consistent failure to "demonstrate acknowledgement and understanding" of the reasons for Lauren's injuries and removal curtailed any reasonable efforts DSS could make towards reunification. *Id.* Despite this, DSS provided and coordinated services to aid in Respondents' reunification efforts, including parenting classes, substance-abuse and mental-health assessments, and consistent contact with caseworkers. Thus, we reject

Respondents' argument and hold that competent evidence supports the trial court's finding that DSS made reasonable efforts towards reunification.

### C. Denial of Rule 60 Motion

Finally, Respondents argue that the trial court abused its discretion by denying their Rule 60(b)(6) motion to reopen the evidence regarding adjudication. A trial court may grant a party's Rule 60(b) motion for relief from a final judgment or order for reasons including mistake, newly discovered evidence unavailable at the time of trial, or "[a]ny other reason justifying relief from the operation of the judgment." N.C. R. Civ. P. 60(b)(6). We review a trial court's denial of a Rule 60(b) motion solely for abuse of discretion. *See In re E.H.*, 227 N.C. App. 525, 530 (2013). Because Respondents failed to include a copy of the trial court's order denying their Rule 60(b) motion in the record on appeal, we cannot review their appeal from that order. *See* N.C. R. App. P. 9(a)(h). Accordingly, we dismiss Respondents' appeal from the denial of their Rule 60(b)(6) motion.

### IV. Conclusion

For the reasons discussed above, this Court (1) denies Respondents' PWC, (2) grants in part and denies in part Petitioner's motion to dismiss, (3) affirms the trial court's 27 January 2025 permanency-planning order, and (4) affirms the trial court's denial of Respondents' Rule 60(b)(6) motion.

AFFIRMED IN PART; GRANTED IN PART; DENIED IN PART.

Judges GORE and FREEMAN concur.

Report per Rule 30(e).