IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-44

No. 121PA21

Filed 18 March 2022

IN THE MATTER OF: V.S. and A.S.


On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) from orders entered on 28 September 2020, 29 October 2020, and 4 March 2021 by Judge W. Turner Stephenson III in District Court, Bertie County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellee Beaufort County Department of Social Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Wendy C. Sotolongo, Parent Defender, and Annick Lenoir-Peek, Deputy Parent Defender, for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1  Respondent appeals from orders terminating her parental rights in the minor children V.S. and A.S. (Vincent and Ava),[1] arguing that the trial court erred in

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities.

determining that there was a likelihood of a repetition of neglect. After careful review, we hold that the trial court did not err in determining that there was a likelihood of a repetition of neglect. Accordingly, we affirm the trial court's orders terminating respondent's parental rights.

## I.     Factual and Procedural Background

¶ 2     Bertie County Department of Social Services (DSS)[2] initiated this matter on 20 June 2017 by filing petitions alleging Vincent and Ava to be neglected and dependent juveniles. The trial court adjudicated the children neglected juveniles, finding that respondent "created an unsafe living environment for her children" and lacked understanding regarding everyday functioning and parenting. Under respondent's care, Vincent and Ava had been exposed to pornography and domestic violence, had been kept in "filthy" homes, had unstable living arrangements, and had poor hygiene. At the time of the petition, Vincent and Ava were residing with respondent in a home with "maggots under the carpet resulting from a failure to dispose of garbage." The trial court also adjudicated respondent to be mentally incompetent and appointed her a guardian ad litem.

¶ 3     After a permanency planning hearing on 5 February 2019, the trial court relieved DSS of reunification efforts, finding that the permanent plan of reunification

---

[2] On 2 April 2019, the trial court allowed Bertie County Department of Social Services's motion to substitute Beaufort County Department of Social Services for Bertie County Department of Social Services as a party of interest.

could not be implemented within the next six months because of Vincent's and Ava's therapeutic and medical needs as well as respondent's failure to participate in her case plan or address her situation such that the children could return to her care. In an order filed in July 2019, the trial court ordered that the primary plan be adoption, finding that reunification in the next six months was still "not possible" due to respondent's inability to acquire independent living skills for her own daily functioning and her limited cognitive functioning. DSS moved to terminate parental rights on 5 November 2019.

¶ 4    At the termination-of-parental-rights hearing, DSS objected to certain testimony by two of respondent's witnesses, which the trial court sustained. Respondent made an offer of proof by having each witness, on the record, answer the same questions to which the trial court had previously sustained objections. After the hearing, the trial court entered an order adjudicating that grounds existed to terminate respondent's parental rights to Vincent and Ava based on neglect, N.C.G.S. § 7B-1111(a)(1), and dependency, N.C.G.S. § 7B-1111(a)(6).

¶ 5    Respondent filed a notice of appeal on 24 November 2020, which was signed by respondent and her attorney. In an order entered on 4 March 2021, the trial court dismissed respondent's notice of appeal for failure to have her guardian ad litem sign the notice of appeal. On 7 April 2021, respondent filed a petition for writ of certiorari

requesting reinstatement of the appeal. This Court, in a 9 June 2021 special order, allowed the petition for writ of certiorari.

## II. Analysis

### A. Standard of Review

¶ 6      The North Carolina Juvenile Code sets out a two-step process for termination of parental rights: an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109 to -1110 (2021). At the adjudicatory stage, the trial court takes evidence, finds facts, and adjudicates the existence or nonexistence of the grounds for termination set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e). If the trial court adjudicates that one or more grounds for termination exist, the trial court then proceeds to the dispositional stage where it determines whether terminating the parent's rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

¶ 7      Appellate courts review a trial court's adjudication pursuant to N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent, and convincing evidence and whether the findings support the conclusions of law. *In re E.H.P.*, 372 N.C. 388, 392 (2019). In doing so, we limit our review to "only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a

contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). Further, "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. at 407. We review the trial court's conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

### B. Neglect

¶ 8 The trial court concluded that grounds existed to terminate respondent's parental rights to Vincent and Ava for neglect under N.C.G.S. § 7B-1111(a)(1). The Juvenile Code authorizes the trial court to terminate parental rights if "[t]he parent has abused or neglected the juvenile" as defined in N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1) (2021). A neglected juvenile is defined, in pertinent part for this matter, as a juvenile "whose parent . . . [d]oes not provide proper care, supervision, or discipline . . . [or c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2021).

¶ 9 "[I]f the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843 (2016). "When determining whether such future neglect is likely, the [trial] court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212 (2019). "The determinative factors must be the best interests of the child and the fitness of the parent to care for

the child at the time of the termination proceeding." *In re Ballard*, 311 N.C. 708, 715 (1984) (emphasis omitted).

¶ 10    Here, the trial court found past neglect and determined that there was "a high likelihood of a repetition of this neglect" if Vincent and Ava were returned to respondent's care. Respondent does not contest the finding of past neglect but limits her challenge to the determination that there was a likelihood of future neglect, specifically arguing that "the [trial] court failed to properly address whether or not [Ms.] Bunch (and other family members) . . . could assist [respondent] in preventing future neglect." In making this argument, respondent challenges a number of findings of fact as unsupported by the evidence. However, even if we were to find these findings unsupported, we are still bound by the remaining unchallenged findings of fact which are more than sufficient to support the trial court's determination that there was a likelihood of a repetition of neglect.

¶ 11    The unchallenged findings do not reveal any change in circumstances supporting the conclusion that Vincent and Ava would not be neglected in the future if returned to respondent's care. Instead, the findings provide overwhelming support for the trial court's determination that there was a likelihood of a repetition of neglect, regardless of respondent's challenges to other findings involving the suitability of family members as caregivers. The relevant unchallenged findings are as follows:

> 38.  The following facts, from the adjudication hearing, are binding on the parties, and consist of the

reasons the juveniles were removed from the home.

> a. [Respondent] lacks adequate housing and has presented an identifiable pattern of unstable living for the last twelve months, which has created an unsafe living environment for her juveniles.

> b. [Respondent]'s frequent changes in and different living arrangements have not resulted in a better placement due either to unsafe neighborhoods, a failure to have basic accommodations such as heat or air conditioning in a mobile home, and/or a failure to have an appropriate number of bedrooms, including one home with no beds and all household members sleeping in one room on the floor.

> c. [Respondent]'s homes have been filthy, including her home at the time of the filing of the underlying petition, which was found to have maggots under the carpet resulting from a failure to dispose of garbage.

> d. The juveniles' personal hygiene when in the care of [respondent] over the past [twelve] months was poor.

> e. The juveniles have been directly exposed to domestic violence that involved [respondent]'s live-in boyfriend cursing at her, pushing her, spitting in her face, breaking furniture in anger, and on one occasion threatening that "everyone got to die one day[."]

> f. The juveniles have been exposed to pornography in [respondent]'s home . . . .

> g. Based upon the Comprehensive Psychological Evaluation by Evans Health on [3 May 2017], [respondent] has a history of developmental disability that negatively impacts

the welfare of the juveniles. [Respondent] does not understand many of the decisions and [judgments] in everyday functioning and child rearing. She needs guidance and support not only to parent her juveniles, but also for herself to function independently.

39. The problems in [respondent]'s home for the juveniles consisted of the juveniles having poor hygiene, being exposed to domestic violence, and being exposed to pornography. Due to [respondent]'s cognitive delays, the juveniles' basic needs were not met.

. . . .

48. [Respondent] has completed a psychological/parenting capacity evaluation with Dr. Kristy Matala. The evaluation determined that [respondent] is not capable of parenting these juveniles.

. . . .

51. [Respondent] has extensive and significant cognitive limitations, which impair her ability to address problem-solving situations.

52. [Respondent]'s cognitive limitations interfere with her ability to independently parent her juveniles, and she would require significant supervision and assistance in order to parent.

53. [Respondent] has difficulty making sound decisions for herself or her children. This fact from her evaluation was echoed, during their testimony, by both Ms. Bunch and Ms. Spivey, [with] which this [c]ourt concurs.

. . . .

57. [Respondent] was administered a personality assessment inventory (PAI) which is an objective test measuring personality patterns and clinical syndromes.

58. [Respondent]'s PAI was determined to be invalid as she responded to items inconsistently or did not attend to items appropriately. There are several potential reasons for this response pattern, including carelessness, confusion, or failure to follow test instructions.

59. Dr. Matala believed that [respondent]'s comprehension is so low that she could not understand the PAI test questions, and this Court shares the same concerns.

60. [Respondent] was also administered a brief symptom inventory (BSI) designed to assess her for psychological symptoms that have been present during the past week.

61. During the BSI, [respondent] endorsed experiencing significant psychological turmoil and a variety of physical health complaints. She reported experiencing thoughts and impulses as unwanted and unrelenting. She seems to have unusual ideas.

62. [Respondent]'s test results were consistent with the long-standing concerns documented in the records about her ability to properly parent these juveniles. In real world application, [respondent] has been unable to provide proper care to these juveniles.

63. When interviewed as part of her parenting capacity/psychological evaluation, it was clear that [respondent] had difficulty understanding even simple questions and her responses were not always logical. Her insight and judgment appeared to be poor. [Respondent]'s presentation is consistent with the prior court record and her testimony at this hearing.

64. At the time of her parenting capacity/psychological evaluation, [respondent] complained of being hungry; however, she admittedly did not have any money with her. [Respondent] needs assistance with these type[s] of basic daily living

situations. Both of [respondent]'s own witnesses (Ms. Bunch and Ms. Spivey), indicated that she had difficulty budgeting and needed to be told . . . when to pay her bills.

65. [Respondent] has difficulty understanding basic information. She does not appear to understand her juveniles' diagnoses or their special needs.

66. [Respondent] has no insight into why these juveniles are in the custody of [DSS]. Based upon her lack of insight, it is not likely that she can prevent the situations that previously occurred from repeating, as she lacks the ability to understand what was wrong in the first place.

. . . .

68. [Respondent] continues to reside with Mr. Woodley despite the concerns that have been expressed regarding his suitability to be around these juveniles. Knowing these concerns, [respondent] married him.

69. [Respondent] is aware that there are allegations that Mr. Woodley inappropriately touched her juveniles, but she denies the allegations.

. . . .

81. The services that [respondent] ha[s] received from Positive Generation in Christ have not resulted in her developing insight into the current situation or the reasons that her juveniles were removed from her care.

. . . .

83. Since the [p]etition was filed, [respondent]'s circumstances are such that it is likely that the juveniles would be exposed to the same harmful environment if . . . the juveniles were returned to her residence.

. . . .

86. [Respondent] is not able to care for these

juveniles. If returned to her home, the juveniles would be neglected; repetition of the prior neglect is foreseeable.

. . . .

89. [Respondent] does not know [or] even comprehend basic measures necessary to ensure the juveniles' safety.

These unchallenged findings of fact are binding on appeal and more than sufficient to support the trial court's determination that there was a likelihood of a repetition of neglect.

¶ 12 Certainly, there may be situations where a parent's reliance in part on others to assist her in caring for her children supports a determination that there is not a likelihood of a repetition of neglect if the children are returned to her care. Nonetheless, the "determinative factors" in assessing the likelihood of a repetition of neglect are "the best interests of the child and *the fitness of the parent* to care for the child at the time of the termination proceeding." *In re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102, ¶ 26 (emphasis added) (quoting *In re Ballard*, 311 N.C. at 715 (emphasis omitted)). Even if a parent relies on others for assistance in caring for her children, the trial court must assess the fitness of the parent herself, not others, since the parent retains ultimate authority over the child. *See Adams v. Tessener*, 354 N.C. 57, 60 (2001) (recognizing a parent's "fundamental right to make decisions concerning the care, custody, and control of his or her children" (cleaned up)). Accordingly, a parent must be able to understand the past neglect her children suffered while in her

care; comprehend how to keep them safe from harm through proper care, supervision, discipline, and provision of a living environment not injurious to their welfare; and demonstrate an ability to do so. *See* N.C.G.S. § 7B-101(15). The binding findings of fact in this case reveal that respondent lacked this ability at the time of the termination-of-parental-rights hearing. Therefore, we affirm the trial court's adjudication that a ground existed to terminate respondent's parental rights.

¶ 13 Having affirmed the termination of parental rights on the ground of neglect adjudicated by the trial court, we need not address the remaining ground of dependency. *See In re M.A.*, 374 N.C. 865, 875 (2020). Similarly, while respondent preserved objections to some of the trial court's evidentiary rulings at the termination-of-parental-rights hearing, these objections were only relevant to the findings of fact respondent challenged. Since we found that the unchallenged findings were sufficient to support the trial court's finding of past neglect, its determination that a likelihood of a repetition of neglect exists, and its conclusion that a ground existed to terminate respondent's parental rights, there was no prejudice in the exclusion of the testimony at issue even if in error. Thus, we need not address in further detail respondent's evidentiary arguments. Finally, because we allowed review of this case on the merits through a petition for writ of certiorari, this case is properly before us. *See* N.C.G.S. § 7A-32(b) (2021); N.C. R. App. P. 21(a)(1).

Accordingly, we need not address whether respondent's notice of appeal was defective to resolve this appeal.

### III. Conclusion

The trial court did not err when it adjudicated that the ground of neglect existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), and respondent does not challenge the trial court's best interests determination. Accordingly, we affirm the order terminating respondent's parental rights.

AFFIRMED.